[L. A. No. 3152. In Bank.—February 27, 1914.]

## MARGARET LENNINGER, Appellant, v. JOHN LENNINGER, Respondent.

HUSBAND AND WIFE—COMMUNITY OR SEPARATE PROPERTY—EVIDENCE.— In this action for a divorce evidence tending to show that certain real estate was paid for with community funds was insufficient to sustain the finding of the trial court that the property belonged to the community, where the conveyance of the property was to the wife, and there was evidence that before and at the time of the marriage she had sufficient funds to purchase the property, and she testified positively that she purchased it with such money alone.

ID.—CONVEYANCE TO WIFE—PRESUMPTION THAT PROPERTY IS SEPARATE— EVIDENCE TO OVERTHROW.—Where real estate is conveyed to a married woman, a presumption arises that the title thereto is vested in her as her separate property. The burden is then upon the husband, who contends that the property belongs to the community, to overcome the presumption by clear and convincing evidence; and his surmise or belief that the property was purchased with community funds, based in his ignorance of the fact that the wife had any separate property, is insufficient to overcome the presumption.

ID.—MISAPPROPRIATED FUNDS—WHETHER BELONG TO COMMUNITY.—If a woman, while in partnership with a man, appropriates partnership funds, the money thus appropriated will not, upon their subsequent marriage, be regarded as community property.

ID.—SEPARATE PROPERTY—ROOMING HOUSE CONDUCTED BY WIFE— PROFITS.—Where a rooming house is the separate property of a married woman, all the profits from its management by her do not constitute community funds.

APPEAL from a judgment of the Superior Court of Kern County. Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

Kaye & Siemons, for Appellant.

J. R. Dorsey, and Charles N. Sears, for Respondent.

LORIGAN, J.—This is an action for divorce in which plaintiff was awarded a decree on the ground of extreme cruelty. Two contiguous lots on "K" Street in the city of Bakersfield, purchased during the marriage on the installment plan and about one-third paid for, were conceded in the case to be community property and were awarded by the court to plaintiff. Another lot referred to in the case as the 18th Street lot in the same city, and which plaintiff claimed was her separate property, the court also found was community property and assigned an undivided one-half therein to the plaintiff and the other undivided one-half to the defendant.

Plaintiff appeals from that portion of the decree awarding half of the 18th Street lot to the defendant, and challenges the sufficiency of the evidence to sustain the finding of the court that this lot was community property. The appeal was disposed of by the district court of appeal for the second district, which affirmed the judgment, being of the opinion that there was some evidence in the case which warranted the trial court in finding that this was community property and under the rule of conflicting evidence refused to disturb the finding.

If from an examination of the record we, too, are of the opinion that the finding has some substantial evidence to support it, the same rule of conflicting evidence must govern here and require an affirmance of the judgment. Whether it has that support we shall proceed to consider.

The plaintiff prior to her marriage to the defendant was a widow—Mrs. Margaret Kosel, known also as Marie Kosel. She came a stranger from Austria several years before with three young children and settled in Bakersfield, supporting herself and the family by her labor. She was an industrious woman constantly engaged in domestic service in Bakersfield until a few years prior to the time of her marriage, when she was engaged in conducting, apparently successfully, a rooming and boarding house in that city. She was of a thrifty, economical disposition, and during her years of employment in Bakersfield and before her marriage, managed to save up at various times considerable amounts of money from her earn-

ings.   Defendant was engaged in the liquor business in Bakersfield, either running a saloon or working as a barkeeper when plaintiff became acquainted with him some short time after her arrival in that city.   Prior to her ceremonial marriage to the defendant, and as early, at least, as 1905, plaintiff and defendant resided in the same house.   In 1905 she and defendant, at the suggestion of the latter, entered into a joint business venture consisting of conducting a saloon and boarding house in a place called Edison in Kern County, plaintiff lending defendant some five hundred dollars, though she had loaned him sums of money before this, to embark in the enter-prise.   While conducting the business at Edison, and after a stay of some ten or eleven months there, plaintiff suddenly left the defendant and returned to Bakersfield, mainly on account of jealously proceeding from the conduct of defendant toward another woman, and on reaching Bakersfield immediately brought an action against defendant to recover the five hundred dollars which she had loaned him and attached the business at Edison.   The result was that the dealer who had furnished liquor to them took over their business at Edison as security for his claim under an arrangement made between him and plaintiff and defendant.   Shortly thereafter and about December 8, 1906, the plaintiff purchased in Bakersfield with her own separate funds a lodging house known as the California rooming house, which she exclusively conducted for about a year and a half before her marriage to defendant. The latter off and on during that period lived in this rooming house as a member of the household.   This was not on the most harmonious terms, however, as the plaintiff was frequently pressing him for money either for his room or board or under a claim that he was indebted to her for money which she had previously loaned him.   As a result defendant would often leave the place to return, however, when it suited him.   Notwithstanding these disputes their relations were so far amicably restored that they concluded to have a marriage ceremony performed, which was accordingly done on February 18, 1908.   Plaintiff thereafter continued to conduct the California rooming house for about a year, and defendant found regular employment as a bartender in a saloon in Bakersfield, receiving for his services the sum of twenty-one dollars a week, of which he turned over to her ten dollars a week

for ten months. The defendant in a general way testified that the profits of the rooming house while plaintiff conducted it after their marriage amounted to an average of five dollars a day. The lot here in question was purchased on July 15, 1909, about a year and a half after the marriage of the parties, the conveyance being taken in the name of the plaintiff. It appears from the evidence, as we have stated, that the plaintiff from the time of her arrival in Bakersfield from Europe, was an industrious, thrifty woman, saving all the money she could. She testified that for several years prior to her marriage with defendant she had been depositing in the Kern Valley bank in Bakersfield, various sums of money at different dates, taking certificates of deposit therefor. During the financial panic in the fall of 1907 she became timorous of the safety of her money in the bank, which amounted to one thousand two hundred dollars, and gradually began withdrawing such amounts as the bank officials would then permit. This money so withdrawn, amounted to some six hundred dollars, which she kept with her in the California rooming house. The testimony of plaintiff shows, and it is borne out by the books of the Kern Valley bank, that on the day of the marriage of the plaintiff with the defendant, there was to the credit of the plaintiff in that bank, represented by four certificates of deposit issued to her in her former name of Kosel, the aggregate sum of five hundred and forty dollars. Plaintiff testified that five days after her marriage with defendant she took the six hundred dollars which she had at different times previously withdrawn from the bank, added two hundred dollars thereto that she had saved from her management of the boarding house and deposited this sum of eight hundred dollars in the Kern Valley bank, receiving therefor four certificates of deposit for two hundred dollars each. In corroboration of this is not only the testimony of the daughter of the plaintiff, but the books of the bank itself show it. While this eight hundred dollars was deposited after the marriage it is, of course, not pretended that the community had accumulated this eight hundred dollars in the five days of its then existence. This sum beyond any question of doubt was the separate property of plaintiff. After her marriage, but prior to her purchase of the property in dispute, plaintiff had contracted to purchase another piece of property unknown to

defendant and had made various payments under her con-
tract by indorsement of some of her certificates of deposit
in the Kern Valley bank. These payments amounted to about
seven hundred dollars. Subsequently she became dissatisfied
with this bargain and, as previously agreed between the owner
and herself it might be, the contract of purchase was rescinded
and the seven hundred dollars returned to her. She then
began negotiations for the purchase of the lot here involved
and bought it for the sum of one thousand five hundred and
fifty dollars. She paid for it partly in cash that had been
refunded to her as just stated, and the balance, excepting two
hundred dollars, she paid by indorsing certificates of deposit
issued to her by the Kern Valley bank. The balance of two
hundred dollars she borrowed on a mortgage on the property
and this she paid later from money which was due her from
third parties prior to her marriage and thereafter paid her.
These facts were testified to by plaintiff and supported by
other evidence. Defendant admitted that when he married
the plaintiff he had no property whatever.

Under this recited evidence we have, then, this situation:
A conveyance of the lot in question to plaintiff which of itself
raised a presumption that title thereto was vested in her as
her separate property (Civ. Code, sec. 164) ; that before and
at the time of her marriage with defendant plaintiff had the
sum of one thousand three hundred and fifty dollars in cer-
tificates of deposit and cash sufficient to subsequently pur-
chase the property, and her positive testimony that she pur-
chased the property with this money alone. This evidence
fully and satisfactorily established that the lot in controversy
was the separate property of the plaintiff, and unless there
is some evidence in the case of a substantial character tending
to rebut the presumption and overcome the affirmative evi-
dence in support of it produced by plaintiff the finding of
the court that the lot was community property cannot be sus-
tained.

There are some incidents or circumstances which occurred
while these parties were associated together and long prior to
their marriage, and other matters occurring during their mar-
riage which are relied on by defendant as overcoming the pre-
sumption arising from the conveyance to the plaintiff and the
testimony of the plaintiff, and supporting the finding of the

court that the purchase of the lot was made with community funds. There is not a particle of direct evidence that any community funds went into the purchase of this lot, and unless these circumstances and incidents relied on were sufficient to justify a reasonable inference that they had, the finding cannot be sustained.

Considering, now, these circumstances. At various times covering several years before her marriage, plaintiff had made deposits in the Kern Valley bank, always taking certificates of deposit therefor. It appears that on a few occasions she left some money with a friend of hers, a merchant in Bakersfield named Peter Kosel, asking him to deposit it for her in the bank in her name. He testified that he did make such deposits for her in 1906 or 1907 and delivered to her the bank certificates therefor. He could not state how many they were or their amounts. The wife of Peter Kosel was named Mary and he had taken out a certificate of deposit jointly in favor of himself and his wife. It is insisted by respondent that it appears from the testimony of this witness that he not only deposited money in favor of plaintiff but in favor of himself and also of his wife, and for this reason it was difficult for the court to determine from the books of the bank respecting certificates of deposit issued to the various parties by the name of Kosel how much of the money represented thereby had been deposited to the credit of the plaintiff or to the others of that name. This, of course, is directed against the claim that at the time of her marriage she owned the four outstanding certificates of the Kern Valley bank issued in favor of M. Kosel and representing five hundred and forty dollars deposited there. But the testimony of Peter Kosel and of the bank's books present no such difficulty as the respondent contends for. The only certificate of deposit which Peter Kosel or his wife had in the Kern Valley bank, as shown by the books or otherwise, was a one thousand two hundred dollar certificate of deposit which had been issued April 18, 1907, and cashed in November of that year. There is no evidence that Peter Kosel and his wife, or either of them, had any other certificate of deposit issued to them, or either of them, by the Kern Valley bank, excepting this one for one thousand two hundred dollars, and to this the plaintiff never made any claim. All the certificates representing this five

hundred and forty dollars had been surrendered and cashed long before the trial of this action. No pretense was made by the attorneys for the respondent when either Peter Kosel, plaintiff, or the cashier of the bank were upon the stand with the books of the bank, and these and all other paid and surrendered certificates of deposit issued in the name of Kosel available to them for inspection, that any of these certificates representing this five hundred and forty dollars, or any others, had not been indorsed and surrendered by plaintiff herself. There was not a particle of evidence to show that there were any other persons of the name of Kosel, except Peter Kosel and his wife and the plaintiff, who had ever had certificates of deposit issued in their favor by the Kern Valley bank; and no evidence, or even a suggestion of it, that these certificates which on behalf of plaintiff it was claimed represented money she had on deposit in the bank when she married defendant represented certificates which had been issued to Peter Kosel or his wife, or either of them, or to anybody else than plaintiff. The purpose of introducing the books of the bank was to support the testimony of the plaintiff that she had in the Kern Valley bank at the time of her marriage about six hundred dollars, represented by certificates of deposit in her favor and then unpaid, and that she deposited eight hundred dollars in said bank five days after her marriage, and this claim the books did support. The fact that a person of the family name of Kosel had also a certificate of deposit at one time issued by the bank had not the slightest tendency to refute the positive testimony of plaintiff that she had at the time of her marriage about six hundred dollars in the bank represented by certificates of deposit then held by her.

Another matter relied on by defendant as tending to show the investment of community funds in the purchase of this lot is what may be referred to as the Edison affair—the venture of these parties in the saloon and boarding house business at Edison which plaintiff closed up by a suit brought against defendant to recover the five hundred dollars she had loaned him to embark in that enterprise. It is claimed by defendant that while they were conducting that business plaintiff appropriated funds of the partnership to which she was not entitled and deposited them in the Kern Valley bank; that defendant

had an interest in these funds and that they went in as payment for the 18th Street property and must be treated as community funds.

This partnership business was conducted for some ten or eleven months and for awhile was properous. Defendant did not testify that plaintiff had taken any of the funds of the partnership; he did not know whether she had or not, but thought she had. What money was collected in that business was in charge of the plaintiff but accessible at all times to the defendant, and it is suspected that she must have withdrawn some of those funds because she made a few deposits in the Kern Valley bank during this time and it is claimed that there was no other source from which she would have obtained this money. It appears from the record before us that the testimony of defendant with reference to the Edison enterprise, the custody of the partnership funds by plaintiff and what statements were made by defendant having any tendency to support his claim that plaintiff had appropriated more than her share of those funds was stricken out by the court on the motion of the plaintiff for the reason that the partnership matter had no relevancy or bearing on the question of community property. But as the matter of these funds was at times subsequently referred to in the evidence we will treat it on the theory that it was before the trial court for such appropriate inferences to be drawn from it as were warranted.

It is to be observed that the Edison enterprise was engaged in two years before the marriage of the parties and this suspected appropriation of partnership funds by plaintiff occurred at least a year and a half before the marriage, and if it be assumed that occasionally she did take some of the partnership funds and deposited them to her individual credit in the Kern Valley bank, it does not follow that she took any more than would be coming to her on a winding up of the partnership affairs. The partnership does not appear to have been insolvent but simply that plaintiff brought suit and closed the business up on account of their disagreement and it had to be disposed of. But this matter hardly deserves the discussion we have thus far given to it because if it be conceded that plaintiff did take some of these partnership funds, that fact could not constitute them funds of a marital community which then had no existence. If defendant had any

claim against plaintiff growing out of their partnership transaction this could only be determined and adjusted in an action to wind up the partnership and for an accounting. This partnership difference or partnership matter in none of its features had any relevancy whatever upon the question of whether this lot was community property or not. However the plaintiff may have acquired the money which she possessed when she married defendant it was, as against any assertion of defendant in this action of an interest in any of it arising out of a previous partnership between them, the separate property of the plaintiff and by no process of legal reasoning can it be transmuted from separate property into community property simply by a subsequent marriage of the parties. It is apparent, therefore, that for these reasons, the Edison venture, or any claim which defendant may have against the plaintiff growing out of any partnership transaction, could have no relevancy whatever upon the character of the purchase money which plaintiff paid for the lot in question.

The only other circumstances claimed to sustain the finding is that relative to the community earnings and the conduct of the plaintiff respecting the purchase of this property. Defendant, as he testified himself, had nothing when he married the plaintiff. They lived in the California rooming house, the separate property of the plaintiff, for about one year, when they left it, having purchased the other real property involved in this action known as the "K" Street property and moved into it. They lived there for a year and eight months when this suit for a divorce was commenced. While conducting the California rooming house according to a general estimate of defendant not supported by any details, the daily profits therefrom averaged about five dollars a day and it is conceded that defendant paid to plaintiff ten dollars each week of his earnings as bartender for a period of ten months. It is claimed by defendant that the purchase of the lot in question was made by plaintiff with the community funds accumulated during this period. But there is no evidence of this. All that defendant testified to in this regard, and his is the sole testimony on that point, is that he thought that the purchase had been made from the community funds because, as he said, the plaintiff had no other money with which to make the purchase. But it is quite apparent from the evi-

dence that the plaintiff did have separate funds of which the defendant knew nothing, and quite sufficient to make the purchase, and aside from his belief on the matter of the investment of community funds in the purchase there is nothing . at all in the case tending to show that a dollar of such funds had gone into this purchase. Plaintiff testified that she kept a separate account of the moneys which she had before marriage and what was saved from the proceeds of the California rooming house while she ran it for the time after the marriage and his wages that defendant gave her for ten months, and that she deposited these savings in the Kern Valley Bank and the books of the bank show an aggregate of such deposits amounting to three hundred dollars. It was proven by her, and unquestioned, that from the community funds three hundred dollars was paid as installments on the purchase of the "K" Street lot—the community lot—and three hundred dollars for a piano purchased by defendant for their residence there, and it would be only a reasonable inference that any community funds earned and saved over these amounts were used for the support of the household during the two and a half years while plaintiff was conducting the California rooming house and during the year and a half after she disposed of that house and was living on the residence property. Assuming, however, that under the general estimate of the defendant, who did not manage the rooming house or know any of the details of such management or join in the payment of any of its expenses or those of the household, that a larger amount of money should be credited to the community account than was testified to by plaintiff, this would not, of itself, warrant the court in finding that community funds had gone into the purchase of the property in question, in the absence of any other evidence having some tendency to show that fact. The rooming house was the separate property of the plaintiff, and all the profits from its management by her would not constitute community funds (*Pereira* v. *Pereira,* 156 Cal. 1, [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488]), and it was not shown how much were such. This indefinite showing, at most, would only raise a conjecture or probability that some of the community funds which were in charge of the plaintiff were not accounted for in detail by the plaintiff in her testimony. But plaintiff was not called

upon to prove that the property was not purchased with community funds. As already stated, from the conveyance to her, the presumption of law arose that it was purchased with her separate funds. The burden was on the defendant to overcome this presumption by clear and convincing evidence (*Alferitz* v. *Arrivillaga,* 143 Cal. 646, [77 Pac. 657]), and a surmise that some of the funds of the community may have gone into the purchase based on a probability that all community funds received by plaintiff were not accounted for in her testimony nowhere approached the character of clear and convincing evidence which must be produced to overcome the presumption. As it was insufficient to disturb the presumption it was equally insufficient to raise a substantial conflict against the positive testimony of the plaintiff given in support of the presumption that, in fact, the purchase was with her separate funds.

Now, as to the conduct of plaintiff in the purchase of this property. It is true that she never told the defendant that she had separate funds of her own when she married him, and it is equally true that she was indisposed to allow him after their marriage to have control of the community earnings, the custody of which it was agreed between them at the time of their marriage that she should have. Neither did she tell him that she was negotiating for or had purchased the property in controversy. But all these matters are reasonably and satisfactorily accounted for in the evidence. Defendant was not a man of an economical or money-saving disposition. Plaintiff always, from her arrival in Bakersfield, was a hard working, industrious woman, constantly in employment in that city earning a support for herself and children. She was of a thrifty, economical disposition, and by careful management had succeeded during the many years of her employment in saving portions of her earnings and deposited them in the banks in Bakersfield. For a number of years prior to their marriage, plaintiff and defendant had associated together to the material advantage of the latter. During this period he had frequently obtained money from her, and a large amount of these advances he had not repaid at the time they were married, or since. Under a belief warranted by her frugality and economy that she had money secreted somewhere, he was constantly importuning her to let

him have it, and her refusal to do so in the later years of their association and before their marriage was the occasion of constant quarrels between them and frequent temporary severances of intimate relations. Plaintiff from experience found that the only way she could keep her money from the defendant was by depositing it in banks and preserving secrecy about it. This condition applied not only before but after their marriage, and it was with a view to more safely securing to herself the benefit of the money she had saved before marriage that she invested it in the property here in question. These circumstances clearly answer any criticism which might otherwise be fairly made of her conduct in secreting from her husband the possession by her of separate funds, and like secrecy in purchasing the lot in question. This secrecy in both regards was based on satisfactory prudential grounds, and is not at all inconsistent with the possession of separate funds by her before her marriage and the investment of them subsequently in the purchase of this property.

We have discussed the matters which are or can be relied on by defendant in support of the finding that the lot in question was community property. Some of these, as we have pointed out, have not the slighest bearing on the question of the character of the funds which went into the purchase of the lot in controversy, and none of the others amount to anything approaching a substantial showing that the purchase of this property was made with community funds which might present a situation of conflicting evidence in the court below precluding this court from reviewing a finding based on it. All that appears in the case under the claim of defendant that community funds went into the purchase of the lot is the belief expressed on his part that the lot was purchased with money of the marital community, which belief was based in his ignorance of the fact that his wife had any separate property of her own when they were married. This, however, amounts only to a surmise on the part of the defendant, and cannot overcome the presumption of law arising from the conveyance itself to the wife and the support which is given to that presumption from the evidence showing that she had funds of her own when she married, and the positive

testimony of plaintiff that she invested those funds in the purchase of this property.

The judgment appealed from is reversed.

Sloss, J., Shaw, J., Angellotti, J., Melvin, J., and Henshaw, J., concurred.