[Civ. No. 4233. First Appellate District, Division Two.—July 19, 1922.]

CLARA B. VANDERVORT, as Administratrix, etc., Appellant, v. EMMA L. GODFREY et al., Respondents.

[1] HUSBAND AND WIFE—CONVEYANCE OF PROPERTY TO WIFE—PRESUMPTION—SEPARATE PROPERTY.—In the absence of evidence to rebut the presumption arising from section 164 of the Civil Code that property conveyed to a married woman by an instrument in writing is her separate property, it must be concluded that the property is the separate property of the wife.

[2] ID.—PURCHASE OF PROPERTY BY WIFE—PROCEEDS OF SALE OF SEPARATE PROPERTY — PRESUMPTION. — Where a wife uses the proceeds of the sale of her separate property in the purchase of other property and takes the deed thereto in her own name with the consent of her husband, the presumption is that the property purchased is her separate property.

[3] ID.—TAKING OF DEED IN WIFE'S NAME—CONSENT OF HUSBAND—SECURITY OF INDEBTEDNESS TO CHILDREN — PRESUMPTION NOT REBUTTED.—Where a widow before her remarriage appropriated to herself funds belonging to her minor children and thereafter she used a portion of such funds and her own money for the purchase of real property, and thereafter she sold such property and from the proceeds thereof purchased other property and took the deed thereto in her own name with the express consent of her husband, the presumption that the property last acquired was her separate property was not rebutted by evidence that the deed was taken in the wife's name for the purpose of securing one of the children for the amount of the mother's indebtedness, on the theory that the purchase was with money borrowed during coverture, the wife alone signing the note acknowledging the indebtedness.

APPEAL from a judgment of the Superior Court of Riverside County. George H. Cabaniss, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

W. T. Kendrick and J. H. Ardis for Appellant.

Meserve & Meserve for Respondents.

NOURSE, J.—Plaintiff sued in equity as a judgment creditor of the defendant Emma L. Godfrey to set aside a deed made by said defendant to her husband and codefendant herein. Plaintiff had sued the defendant Emma L. Godfrey for damages for tort resulting in the death of her husband. During the course of the trial and on the day previous to the entry of verdict against her the said defendant, at the request and suggestion of her counsel and for the purpose of defeating plaintiff in the collection of the judgment which was then anticipated would be entered against her, deeded all her property over to her husband without any consideration. Plaintiff, claiming that this was a fraud upon her as the property conveyed was all the separate property of the defendant Emma L. Godfrey, brought this action to have the deed set aside and to impress upon and enforce her lien represented by the judgment. The trial court found that the property was the community property of Emma L. Godfrey and her husband and entered judgment in their favor.

The facts of the case material to this appeal are that prior to October 15, 1907, the defendant Emma L. Godfrey, who was then a widow, obtained from the estate of her deceased husband the sum of about four thousand five hundred dollars. Believing herself entitled thereto as the natural guardian of her two minor children, she thereupon appropriated and used for herself the sum of approximately fifteen hundred dollars belonging to each of said children. On the 15th of October, 1907, she married the defendant Frank A. Godfrey, and on the tenth day of December immediately following she bought in her own name the so-called Covina Ranch, the purchase price of which was paid wholly from her own moneys and the moneys which she had thus appropriated as guardian of her two minor children. The title was taken in the name of the wife; it was subsequently sold, and, on January 11, 1911, with the proceeds thereof they purchased the Corona property, which is the property in suit. For this property two thousand eight hundred dollars was paid as follows: Two thousand dollars by the delivery of a mortgage which ran to the wife alone and which had been received by her in part payment for the Covina property, eight hundred dollars paid by check signed by the wife alone and drawn

on her individual account in bank. On January 31st, immediately following this transaction, the wife gave her own personal note to her daughter acknowledging an indebtedness of fifteen hundred dollars, the wife adding to the note the following: "This money belongs to my daughter, Alice Lee Rocker, which was left her from the estate of her father, Joe Rocker, and which I have not settled with her." Mrs. Godfrey's testimony as to these transactions is as follows: "One-third of that belonged to my son and one-third to my daughter [four thousand five hundred dollars was received from her first husband's estate]. They were minors when that estate was closed and it went into my hands as their guardian. I never did settle with my son with reference to his share. Thinking that I had a right to, I used that money in the purchase of the Charter Oak or Covina Ranch. When that ranch was sold I took back a two thousand dollar mortgage, that mortgage was used in the purchase of the Corona property. During all of that time that money was considered by me as being money which *I owed* to the children. *I never had settled with them at all.* And then when I made the Corona deal I settled with the daughter by giving her a fifteen hundred dollar note." The daughter testified that the first time that she discussed with her mother the matter of the money due her from her father's estate was when her mother purchased the Corona property and the note was given to her. The husband testified that this money was borrowed by Mrs. Godfrey from her daughter before he and Mrs. Godfrey were married. No other witnesses were examined. So far as this testimony is concerned, the proof is that the mother appropriated to herself the funds belonging to her two minor children before she married the defendant Godfrey; that without any arrangement with either of her two children she used a portion of this money (how much does not appear) for the purchase of the Covina property and thereafter sold this property and from the proceeds thereof, and not otherwise, purchased the property in suit; that thereafter she executed a note to her daughter evidencing her own personal indebtedness of fifteen hundred dollars, but according to her own testimony made no settlement with her son, who was deceased some time prior to the trial of the action.

So far as the Covina property is concerned, it appears that the title was taken in the name of the wife and that when it was sold she took in part payment therefor a mortgage of two thousand dollars in her own name. [1] As to the Covina property, no evidence of any nature was offered to rebut the presumption arising from section 164 of the Civil Code that property conveyed to a married woman by an instrument in writing is her separate property. We must conclude, therefore, that the Covina property was the separate property of the wife. [2] When she used the proceeds of this sale in the purchase of the Corona property and took a deed thereto in her own name with the consent of her husband, the same presumption arose as to the title to the Corona property. To rebut this presumption the respondent relies upon the claim that the property was purchased by money borrowed by the wife during coverture, but, as we have seen, if any money was borrowed in the sense that a loan was made from the daughter, it was obtained upon the sole credit of the wife and not upon the credit of the community. As guardian of her two minor children the wife's obligations for the money obtained from their father's estate was a personal obligation. If the minor son's share was legally retained by her after his death, it was money coming to her by descent and hence her separate property. As to the fifteen hundred dollars obtained from her daughter, it appears without any conflict that the deed and mortgage on the property were taken in the wife's name alone for the purpose, it is said, of securing the daughter for her loan of fifteen hundred dollars. Now, this can be so only upon the theory that the property was then intended to be the separate property of the wife and that the obligation to repay her daughter was her individual obligation and not binding upon the community. The property of the community is not liable for the contracts of the wife made after marriage unless secured by a pledge or mortgage thereon executed by the husband. (Sec. 167, Civ. Code.) If, therefore, this property had been taken, by the parties as community property, it would not have been liable for the obligation of the wife to pay to her daughter. To avoid this result and to secure the daughter for her loan the parties deliberately and intentionally made the property

the separate property of the wife. The evidence is thus clear that the loan, if it can be called such, whereby Mrs. Godfrey obtained the money from her daughter was made upon the mother's individual credit. The loan, therefore, became the separate property of the wife. (*Flournoy* v. *Flournoy,* 86 Cal. 286, 293 [21 Am. St. Rep. 39, 24 Pac. 1012]; *Dyment* v. *Nelson,* 166 Cal. 38, 40 [134 Pac. 988]·; *Farmers' Exch. Nat. Bank* v. *Drew,* 48 Cal. App. 442 [192 Pac. 105, 106]; *Moulton* v. *Moulton,* 182 Cal. 185, 189 [187 Pac. 421].)

[3] This relates only to the fifteen hundred dollars obtained by Mrs. Godfrey from her daughter. As to the rest of the consideration paid for the property in suit, the case is clear. If the money of the minor son was used in its purchase, it was money obtained before coverture by Mrs. Godfrey and did not under any line of reasoning become community property. (*Lenninger* v. *Lenninger,* 167 Cal. 297, 305 [139 Pac. 679].) In the latter case the claim was made that the wife had before her marriage entered into a business partnership with the man who subsequently became her husband; that out of said partnership she had unlawfully misappropriated funds to her own use which after the marriage she had employed in the purchase of a piece of property. Some time thereafter upon the dissolution of the marriage the husband claimed that this property was a part of the community, but the supreme court held that no matter how the wife had acquired the money before marriage it was her separate property.

Furthermore, the presumption declared in section 164 of the Civil Code arising from the written instrument controls unless overcome by clear and convincing proof. (*Alferitz* v. *Arrivillaga,* 143 Cal. 646, 649 [77 Pac. 657].) The evidence in this case is that the deed to the property in suit was taken in the name of the wife with the express consent of the husband. The only evidence offered to rebut the presumption that it was her separate property was the testimony of Mr. Godfrey, to the effect that he did not tell his wife that he was giving the property to her. This may be true and still the parties may have intended that the property should be the separate property of the wife, and all the circumstances of the case indicate that this was their intention. The property was really purchased from

moneys which the wife had in hand and the husband in fact had nothing to give. For a period of more than ten years the deeds, the mortgages, and the bank account were all carried in the wife's name with the husband's consent. The wife had no thought of deeding the property to her husband until advised to do so by her counsel to avoid the verdict in the action for tort. The husband had no thought that the property was anything but the separate property of the wife until counsel advised him that because the purchase price had been borrowed after his marriage the property belonged to the community. Thus, some ten years after the transaction, the husband, upon advice of counsel, changed his intention as to the wife's interest in the property. The character of the property must be determined as of the date of the conveyance. If at that time the parties intended that it should be the wife's separate property no subsequent change of purpose is material. (See, generally, *Miller* v. *Brode,* 186 Cal. 409 [199 Pac. 531].)

Judgment reversed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 16, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 14, 1922.

All the Justices present concurred.

Richards, J., *pro tem.,* and Myers, J., *pro tem.,* were acting.