[Civ. No. 5515. First Appellate District, Division One.—April 21, 1927.]

## GRACE COE GOUCHER, Appellant, v. SAMUEL GRANT GOUCHER, Respondent.

[1] DIVORCE — DESERTION — REFUSAL OF MATRIMONIAL INTERCOURSE — RECONCILIATION—EVIDENCE.—In this action, in which the husband sought a divorce from the wife on the ground of desertion, predicated upon her persistent refusal to have matrimonial intercourse, when neither her health nor any other just cause made such refusal necessary, the evidence having shown that the action of the wife in separating herself from her marital bed was the result of a settled determination and not a sudden impulse, the husband, in order to prove desertion, was not obliged to show that he sought her out and endeavored to have her return, particularly in view of the evidence justifying the fair inference that if he had done so his efforts would have been either unavailing or would have resulted in strengthening the wife's determination to remain away.

[2] ID.—EVIDENCE—CORROBORATION.—In such action, the positive and uncontradicted evidence of both parties having shown the desertion, and the necessary corroboration upon the essential propositions involved having been amply supplied by numerous circumstances fairly arising from the mass of evidence given by other witnesses in the case, the trial court was justified in granting a divorce to the husband.

[3] ID.—COMMUNITY PROPERTY—DECLARATIONS OF PARTIES—EVIDENCE. The character of the ownership of property, whether separate or community, is to be determined by proof showing the mode of acquisition, rather than by any declarations of one of the parties that the property was or was not community property.

[4] ID.—WIFE AS SOLE GRANTEE—DISPUTABLE PRESUMPTION—TRIAL—APPEAL.—The fact that the wife is named as sole grantee in certain conveyances of real property does not determine the character thereof, but merely raises a disputable presumption of separate property, which may be controverted by other evidence, direct or

1. Effort to induce spouse to return home as condition of desertion, note, 39 L. R. A. (N. S.) 1119. Duty to seek reconciliation, note, 138 Am. St. Rep. 153. See, also, 9 Cal. Jur. 672; 9 R. C. L. 371.

4. What is community property and when presumption that property is community may be rebutted, note, 86 Am. Dec. 628. See, also, 5 Cal. Jur. 317; 5 R. C. L. 844. Deed to wife, whether can vest property as separate estate or create a presumption that property so vested, note, 96 Am. Dec. 423.

indirect; and whether or not it is so controverted is a question of fact for the trial court, and its conclusions, unless manifestly without sufficient support in the evidence, are conclusive on appeal.

[5] ID.—WIFE AS GRANTEE — GIFT — KNOWLEDGE OF HUSBAND. — The character of property as community or separate must be determined as of the date of its acquisition; and the establishment of a gift from the· husband to the wife of property acquired in her name depends upon proof showing that he knew that title to the property was to be taken in her name, or that he consented thereto or participated in the transaction.

[6] ID.—TITLE IN WIFE—REPRESENTATIONS TO HUSBAND—EVIDENCE—FINDINGS.—In this action for divorce, in which one of the issues involved was the character of certain property standing in the wife's name, but which the husband claimed was community property, the evidence warranted the trial court in finding that the wife at all times lulled the husband into the firm belief that the title to the property in question, taken in the wife's name, was at all times for the use and benefit of the marital community.

---

(1) 19 **C. J.**, p. 66, n. 44.    (2) 19 **C. J.**, p. 145, n. 62.    (3) 31 **C. J.**, p. 23, n. 27.    (4) 4 **C. J.**, p. 880, n. 96; 31 **C. J.**, p. 59, n. 40, p. 60, n. 45.    (5) 31 **C. J.**, p. 22, n. 21, p. 61, n. 60.    (6) 31 **C. J.**, p. 53, n. 47.

APPEAL from a judgment of the Superior Court of Los Angeles County. John Perry Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert for Appellant.

Earle & McLaughlin for Respondent.

KNIGHT, J.—The respondent Samuel G. Goucher and the appellant Grace C. Goucher are husband and wife. Each brought an action against the other wherein the former recovered judgments and the latter appealed. The first action was commenced by respondent to obtain a decree adjudicating that certain property, real and personal, the former standing in appellant's name and being claimed by her as her separate estate, was community property. The second action was the instant one, commenced by appellant about two months later to secure a divorce upon

5.   See 5 **R. C. L.** 837.

the ground of extreme cruelty, wherein respondent denied
the charges of cruelty and filed a cross-complaint asking
that he be granted a divorce upon the grounds of extreme
cruelty and desertion, and raising the same issue as to the
status of the title to the property as was raised in the first
action. Appellant, answering said cross-complaint, denied
the material allegations thereof relating to the grounds of
divorce, and, as in the former action, claimed most of the
property described therein as her sole and separate prop-
erty.

On stipulation the actions were tried together, but sepa-
rate findings and judgments were entered in each action.
In the first action the court found that all the property in-
volved, except one lot of land hereinafter mentioned, was
community property; and judgment was entered accord-
ingly. In the divorce action the court found that neither
party had established a case of extreme cruelty, but that
respondent had produced sufficient evidence to justify the
granting of a divorce upon the ground of desertion, and,
regarding the property rights, made findings substantially
the same as those made in the first action. The interlocu-
tory decree in the divorce action, besides adjudging that
respondent was entitled to a divorce and establishing the
status of the title to the real and personal property, di-
rected that appropriate conveyances be made conveying to
each of the spouses an undivided one-half interest in the
real property, with the exception of the one parcel above
mentioned; and that the personal property be equally di-
vided, or, upon failure of the parties to agree upon such
division, that it be sold and the proceeds divided. From
the decrees thus entered in said actions Mrs. Goucher prose-
cutes separate appeals, which are presented in separate
printed transcripts, but, under stipulation, are taken on a
single bill of exceptions and are argued in one set of briefs.

The charge of desertion pleaded by respondent as a sec-
ond cause of action in his cross-complaint and upon which
the interlocutory decree of divorce was granted consisted of
allegations of appellant's persistent refusal to have matri-
monial intercourse, when neither her health nor any other
just cause made such refusal necessary (Civ. Code, sec. 96);
and appellant contends that the evidence is insufficient to
support the trial court's decision on that issue, claiming that

the evidence proves respondent to have acquiesced in such refusal; that there was no proof showing the refusal on her part was persistent; and that the testimony of the parties to the action on the elements constituting the grounds of divorce was not sufficiently corroborated.

The bill of exceptions contains a large amount of the testimony, but most of it was given in support of the charges of cruelty, and apparently has only an indirect bearing upon the cause of action upon which the decree was granted. The essential facts pertinent to the issue before us, briefly stated, are as follows: The parties were married in 1892, but for a number of years prior to the commencement of these actions had been having serious domestic differences. About 1913 appellant grew suspicious of respondent's conduct toward a young lady employed as saleswoman by a grocery firm handling products sold by the agency represented by respondent, and mainly because of those suspicions quarrels between the two were almost continuous and grew exceedingly bitter, until May, 1917, when appellant, according to her testimony, "declared" herself to respondent, and thereafter "never occupied his room or his bed." That they did not subsequently occupy the same sleeping apartment or have marital intercourse was testified to by both appellant and respondent, and was corroborated by circumstances established by the testimony of several witnesses who had lived in the house with them during that period of time, with some of whom appellant discussed the matter, and who knew the circumstances under which the parties were living. Furthermore, one of the allegations of appellant's verified complaint was "that since May, 1917, said parties have not lived together as husband and wife"; and appellant concedes in her brief that "the foregoing testimony establishes without dispute that the parties although occupying the same dwelling did not have matrimonial intercourse." The only reason given by appellant for such refusal was the alleged intimacy between respondent and the young woman mentioned. But the trial court found with reference thereto, upon convincing evidence, that appellant's suspicions were groundless; that her accusations of undue intimacy were unreasonable and unjust, and that the accused saleswoman was "a young lady of high moral character," with whom respondent "was friendly in a business way but no more so than he was with

other salesladies in the same or similar stores'' which were handling the products sold by respondent; and that therefore appellant's refusal to continue marital intercourse with respondent on that ground was without just cause.

The evidence further shows that subsequent to 1917 appellant stated to one of her friends, who afterward became a witness in the case, that she ''never occupied the room with Mr. Groucher since she found him with a girl''; and to another that she had not ''roomed with him . . . for a good many years, and did not intend to.'' While testifying in her own behalf, appellant stated that there was nothing in her physical condition to justify her refusal to have reasonable matrimonial intercourse with her husband, and that up to May, 1917, she had not refused to do so. Respondent testified that ''a year or two'' subsequent to May, 1917, appellant told him in effect that she was ''tired living this way'' and if he would confess to having had improper relations with the young woman mentioned she would ''make up'' with him, to which he replied that appellant had accused him of doing many things he had not done, and that he did not propose to ''condemn an innocent girl'' in order to make up with appellant; and that he furthermore said to her: ''You left this room and the door is open; you can come back any time you want to.'' In this connection, however, he testified that he had never refused to live with her. The evidence furthermore discloses that during the period of time between May, 1917, and the commencement of this litigation the parties lived in a continuous state of hostility and hatred toward each other, their associations being marked constantly by violent scenes during which, according to their own testimony, expressions of an exceedingly offensive nature were applied by appellant to respondent, and terms of the most sordid character were hurled by the latter at appellant. The record is replete with testimony of the kind mentioned, but we think it unnecessary to refer to it in greater detail, for no good purpose can be served thereby. It demonstrates beyond doubt, we think, that there were ample grounds for the trial court's conclusions that appellant's refusal to have matrimonial intercourse with respondent was constant and continuous, and therefore persistent, within the meaning of section 96 of the Civil Code; also that when considered with the other evidence was legally suffi-

cient in the matter of corroboration to meet the requirements of the law. In *Vosburg* v. *Vosburg,* 136 Cal. 195 [68 Pac. 694], it was said that where a spouse without cause quits the marriage bed, and does not thereafter seek a renewal of matrimonial intercourse for more than a year, it is sufficient to show a persistent refusal; and that it it not required, in order to show such refusal, that the other spouse shall solicit a return to the marriage couch; and in *Mayr* v. *Mayr,* 161 Cal. 134 [118 Pac. 546], it was held that a finding to the effect that the wife persistently refused to have matrimonial intercourse, but that the husband at all times "acquiesced" in such refusal, will be construed as meaning that he submitted thereto and not that he approved thereof.

[1] The evidence here shows that the action of appellant in separating herself from the marital bed was the result of a settled determination and not a sudden impulse, and, therefore, respondent, in order to prove desertion, was not obliged to seek her out and endeavor to have her return (*Hall* v. *Hall,* 65 N. J. Eq. 709 [55 Atl. 300]), particularly in view of the evidence justifying the fair inference that if he had done so his efforts would have been either unavailing (*Hudson* v. *Hudson,* 59 Fla. 529 [138 Am. St. Rep. 141, 21 Ann. Cas. 278, 29 L. R. A. (N. S.) 614, 51 South. 857]), or would have resulted in strengthening appellant's determination to remain away. (*Trall* v. *Trall,* 32 N. J. Eq. 231.) The facts of the cases cited by appellant in support of her contention that the evidence is insufficient are so essentially different from those of the instant one that we think extended discussion of them is not required. The cases of *Hayes* v. *Hayes,* 144 Cal. 625 [78 Pac. 19], and *Ingraham* v. *Ingraham,* 40 Cal. App. 578 [181 Pac. 234], were unlike the instant one because one of the principal points upon which the decisions therein were grounded was that there was no testimony elicited tending to show that the health or physical condition of the defaulting party did not make her refusal to have reasonable matrimonial intercourse necessary; and it was held that the burden of establishing that fact rested upon the party seeking the divorce on the ground mentioned; and in *Lemberger* v. *Lemberger,* 55 Cal. App. 231 [203 Pac. 786], the circumstances referred to in the opinion clearly proved, as the wife therein claimed, that her

condition of health was such as to make her refusal necessary and that her husband so understood it.

[2] In considering the question of corroboration we have given due application to the rule stated by the supreme court in its opinion denying a hearing before that court of the appeal in *Lemberger* v. *Lemberger, supra,* which is, in effect, that section 130 of the Civil Code requires "that there must be evidence in support of the cause of action upon which a divorce is granted, in addition to the evidence of either or both of the parties to the action, and that the testimony of one party cannot be taken in corroboration of that of the other for the purpose of proving a cause of divorce." The necessary corroboration of the positive and uncontradicted testimony of both parties to this action, upon the essential propositions involved, has been amply supplied by the numerous circumstances fairly arising from the mass of testimony given by other witnesses in the case in support of the causes urged for a divorce.

After reviewing the entire evidence we are of the opinion that it is legally sufficient to sustain the decision of the trial court granting the divorce.

With reference to the question of the property rights, the dispute arises only as to the real property, it being conceded that the personal property belongs to the marital community. All of the real property in dispute is situate in Los Angeles County and was acquired subsequent to the marriage, but title thereto was taken in appellant's name, and in some instances as her sole and separate property. It consists of lots 1, 36, and 54 of the West Ninth Street Heights tract; three lots in the Electric Homestead Association tract, and one lot in the Silver Strand tract, Ocean Park. The court found that the whole thereof was community property, except lot 54 of the West Ninth Street Heights tract, which was declared to be appellant's separate property, respondent having conveyed his interest therein to her by a quitclaim deed. It further found that, notwithstanding all of said property was purchased by appellant and title thereto taken in her name, "the funds used in said purchases were common and community funds belonging to the marital community of the spouses, . . . the same arising out of the joint earnings of the spouses after their marriage"; that no part of said funds "was derived by plaintiff or by defendant,

either by gift, devise, bequest, or descent from any source whatever and no gift of any or either of said lots to plaintiff (appellant) was even intended by defendant."

The evidence adduced upon the issues above mentioned, although conflicting, supports the trial court's conclusions thereon. [3] The character of the ownership of property, whether separate or community, is to be determined by proof showing the mode of acquisition, rather than by any declarations of one of the parties that the property was or was not community property. (*Potter* v. *Smith*, 48 Cal. App. 162 [191 Pac. 1023]; *Bias* v. *Reed*, 169 Cal. 33 [145 Pac. 516]; *Hammond* v. *McCollough*, 159 Cal. 639 [115 Pac. 216].) The proof in the instant cases shows that the nucleus in the acquisition of the real property in dispute was lot number 101 of the Clark and Bryan Westmoreland tract, which appellant purchased on October 1, 1903, in her own name, making a down payment thereon of six hundred dollars, and afterward selling said lot at a profit, which profit, the trial court found, was "invested and reinvested in the purchase of other lots which were sold; she at the same time using in said purchases community money of the spouses" received from the rental of rooms and the keeping of boarders in the home place; also from the sale of animals and other personal property belonging to the marital community. In this connection the court further found, and the evidence proves, "That at the date of the marriage of plaintiff and defendant they had but little money, all of which was consumed in household and living expenses, before any property . . . was acquired . . . ; that plaintiff and defendant, since their marriage, have been economical, saving, hard, thrifty and industrious workers; that all moneys made by both or either went into the common or community fund of the spouses and the same was and did at all times remain community property." In further support of these findings the evidence shows, by fair inference therefrom, that appellant was the financial manager and banker. Respondent turned over his earnings to her regularly, with the understanding, however, as he claims, that the same were to be conserved and invested for the benefit of the marital community. In due time following their marriage, when they became free from debt, she opened and afterward maintained bank accounts in various places and

under different names, one of which was a savings account in her name. Upon the sale of said lot number 101 she continued to speculate in real estate with the profits from sales thereof which were mingled with joint earnings until she acquired the parcels of property now in controversy.

The determinative question as to the character of the ownership of said lot number 101, and, consequently, the controlling question as to the nature of the title to the after-acquired property, depends upon the source whence appellant obtained the six hundred dollars with which she made the initial payment on said lot 101, and upon that point the evidence is in sharp conflict. The court found, upon substantial evidence, that the same "was purchased by and from money that the plaintiff had saved up from the household expenses and other expenses that belonged to the marital community, together with other money furnished to plaintiff by defendant to buy a cloak or coat which . . . she did not buy." In opposition to these facts appellant testified that except for the small sum diverted from the purchase of said cloak the entire amount of said initial payment was cash received by her as a gift from her cousin and her mother. But on cross-examination on this and other points, as the trial court pointed out in its oral opinion, a number of inconsistencies and improbabilities were developed in her testimony, which doubtless affected her credibility as a witness, for the trial court declined to accept as true her testimony regarding the source of said purchase money and made an express finding to that effect. In that state of the record the decision of the trial court upon the issue mentioned is conclusive on appeal, and therefore must be accepted as final as to the adjudication of the property rights.

[4] Appellant contends that since she was named as sole grantee in the conveyances to the disputed property the presumption of separate property created by section 164 of the Civil Code must determine the character of ownership thereof. We find no merit in the point for the reason that such presumption is a disputable one, in the form of evidence, and may be controverted by other evidence, direct or indirect (*Stafford* v. *Martinoni*, 192 Cal. 724 [221 Pac. 919]); and whether or not it is so controverted is a question of fact for the trial court, its conclusions, unless manifestly

without sufficient support in the evidence, being conclusive on appeal. (*Stafford* v. *Martinoni, supra; Potter* v. *Smith, supra; Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308] ; *Gilmour* v. *North Pasadena Land etc. Co.,* 178 Cal. 6 [171 Pac. 1066].) Conceding that the burden of controverting said presumption was upon the respondent (*Lenninger* v. *Lenninger,* 167 Cal. 297 [139 Pac. 679] ; *Elferitz* v. *Arrivillaga,* 143 Cal. 646 [77 Pac. 657] ), and that he was required to do so by clear, convincing, and satisfactory proof (*Estate of Nickson,* 187 Cal. 603 [203 Pac. 106] ), we think the trial court was warranted in concluding from all the circumstances that the same was so controverted.

[5] Appellant furthermore contends that, even assuming that said lot 101 was acquired with community funds, the evidence showing the mode of its acquisition was sufficient to establish a gift from respondent to her of such community property. This contention is based mainly upon the claim that respondent was cognizant of the manner in which title was being taken, and upon the admitted fact that the sale of said lot 101 by appellant was negotiated by respondent with appellant's consent, while she was absent from the state, and that he deposited the proceeds of the sale in the savings account maintained in her name. We are unable to sustain the contention. The character of the property must be determined as of the date of its acquisition (*Vandervort* v. *Godfrey,* 58 Cal. App. 578 [208 Pac. 1017] ), and, under the doctrine appellant seeks to invoke, the establishment of a gift depends upon proof showing that the donor knew that title to the property was to be taken in donee's name, or that the former consented thereto or participated in the transaction. (*Miller* v. *Brode,* 186 Cal. 409 [199 Pac. 531].) The evidence here was to the effect that respondent did not know that the title to said lot number 101 or to the after-acquired property was to be taken exclusively in appellant's name; that when he became aware of it some time after it had happened he demanded an explanation and was told by appellant that she had adopted this course in order to prevent a loss of the property in case a business disaster should befall respondent; and, moreover, that she repeatedly assured him, according to his testimony, that notwithstanding she had so taken title, the property was community property and in the event of her death he

would succeed to the same to the exclusion of her relatives; and in pursuance of this understanding respondent exercised many acts of ownership over the property and continued to turn over his earnings to appellant, part of which was utilized in the payment of taxes and assessments levied against the property. [6] In view of the foregoing evidence we believe the court was warranted in finding as it did that ''plaintiff at all times lulled the defendant into the firm belief that the title to the above-mentioned lots and each of them, taken in her own name, was at all times for the use and benefit of the marital community. . . . ''

We find no error in denying appellant's motions for new trials. The legal questions presented thereby were substantially the same as those disposed of on the merits; and with reference to the matter of the newly discovered evidence, the counter-affidavits filed by respondent show that the testimony of the witnesses appellant sought to produce would only have added to the conflict of evidence upon those issues already determined at the trial.

For the reasons above set forth the decree appealed from herein is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 20, 1927.