[Civ. No. 6042.   Third Appellate District.—October 5, 1938.]

MARY AGNES PALEN et al., Respondents, v. CHARLOTTE B. PALEN, Appellant.

William Ellis Lady for Appellant.

Andrew J. Copp, Jr., for Respondents.

PULLEN, P. J.—Plaintiffs herein are husband and wife. Defendant is the divorced wife of Matthew A. Palen, one of the plaintiffs. Defendant held unsatisfied separate judgments against the plaintiffs. She attempted to levy execution upon these several judgments upon certain real property standing in the name of Mary Agnes Palen, whereupon Mary Agnes Palen brought this action to quiet title to the property, claiming it to be her sole and separate property.

The trial court found the property in question was the separate property of plaintiff Mary Agnes Palen and that she had filed a homestead upon the property prior to the filing of any judgment lien thereon. As to the asserted lien against plaintiff Matthew A. Palen, the court held that it did not affect the property for two reasons, first, because Palen had no interest in the property to which the lien could attach, and secondly because defendant had failed to have the property appraised after execution in conformity with the provisions of section 1245 of the Civil Code.

Upon this appeal defendant claims that the property was not the separate property of plaintiff Mary Agnes Palen, and that if she had ever had a homestead on the property she abandoned the same. As to these points the record discloses, and the court found, that in April, 1933, Mary Agnes Palen purchased this property for $7,500, paying $750 in cash from her own funds and giving a note signed by herself and her husband, Matthew A. Palen, for the balance, which was secured by a deed of trust on the property, payable at the rate of $75 a month. These subsequent instalments, as well as

the payment of taxes and interest, were paid by Palen from his salary as an officer in the United States army.

In December, 1933, plaintiffs, for their own convenience, so the court found, conveyed the legal title to the property, in constructive trust, to Brook Edmonston for the use and benefit of Mary Agnes Palen and without intent to convey to Edmonston any beneficial interest therein and without intent to abandon the homestead previously declared thereon. In May, 1934, Edmonston, without consideration, reconveyed the legal title back to Mary Agnes Palen.

■ As to the claim made by appellant that the property here in question was not the separate property of Mary Agnes Palen, section 164 of the Civil Code provides that whenever any real or personal property is acquired by a married woman by an instrument in writing the presumption is that the same is her separate property. We therefore start with the presumption in this case that this property is the separate property of Mary Agnes Palen. In *Dyment* v. *Nelson,* 166 Cal. 38 [134 Pac. 988], the court held that money borrowed by a married woman on the credit of her separate property is her separate property, and the fact that her husband joined in the notes evidencing the loan did not alter the status of the property. In *Miller* v. *Brode,* 186 Cal. 409 [199 Pac. 531], it was held that where the wife had acquired real property by deed taken in her name the character of the property was established as her separate property and that it was immaterial if the consideration given for the property was community property.

■ Whether or not the property acquired by a husband and wife is separate or community property is determined at the time of its acquisition, and if, when acquired, it was the separate property of one of the spouses it so remains, regardless of the nature of the funds which thereafter pay for it. In *Vandervort* v. *Godfrey,* 58 Cal. App. 578 [208 Pac. 1017], this rule was laid down, the court saying: "The character of the property must be determined as of the date of the conveyance. If at that time the parties intended that it should be the wife's separate property no subsequent change of purpose is material. (See, generally, *Miller* v. *Brode,* 186 Cal. 409 [199 Pac. 531].)"

To the same effect, and citing the foregoing case, is *Goucher* v. *Goucher,* 82 Cal. App. 449 [255 Pac. 892].

■ Considerable emphasis is placed by applicant upon the contention that the homestead was abandoned by the execution of the deed to Edmonston, which the court found created a constructive trust. Section 1243 of the Civil Code provides that a homestead may be abandoned only by a declaration of abandonment or by a grant thereof, and section 1053 of the Civil Code declares that a grant is a transfer in writing and that a transfer (sec. 1039, Civ. Code) is an act by which the title to property is conveyed by one living person to another. It is conceded there was no abandonment of homestead filed, so appellant must rely upon the conveyance to Edmonston to establish such abandonment. The question then is, was the deed referred to a grant, and did it operate to transfer the title to the property from the grantors to the grantee? We are convinced that it did not convey such an interest as to create such abandonment. Neither side has been able to find a case directly determining this point.

Appellant has referred us to several cases but to us they do not appear to be in point. In *Bank of Suisun* v. *Stark,* 106 Cal. 202 [39 Pac. 531], Mr. and Mrs. Stark, the owners of the homestead property, for a consideration, conveyed property to their son upon certain conditions expressed in the deed. The point there involved was whether the payment of the consideration by the son was a condition precedent or a condition subsequent to the title vesting. The court held that the payment of the consideration by the son was a condition subsequent and that the title had vested in the son and the homestead was abandoned. No question of a conveyance in constructive trust, however, was there considered.

In the *Estate of Winslow,* 121 Cal. 92 [53 Pac. 362], cited by defendant, the court held the homestead was abandoned on the theory that the contract and surrounding circumstances evidenced such intent. So, too, in *Oaks* v. *Oaks,* 94 Cal. 66 [29 Pac. 330], also cited by defendant, there was an absolute sale of the homestead property in which the husband and wife joined in the execution of the deed; so, too, may the other cases cited by defendant be distinguished.

In 13 California Jurisprudence, page 515, the scope of the word "grant" is considered, and among other exceptions, it was held a lease is not embraced within the meaning of

"grant" as used in the section; and that the execution of a deed absolute on its face is not an abandonment of a homestead where it is in fact given solely as security for the payment of money. Further exceptions to the rule that a conveyance of the premises operates as an abandonment of the homestead are found in 29 Corpus Juris, section 370, at page 946, setting forth, among other exceptions and limitations, that a homestead is not abandoned by a conveyance and a reconveyance to claimant, there being no consideration for either deed, it being a conveyance of homestead property to a third person to enable the grantor to borrow money, and was not intended to vest in the third person any beneficial right to the land; or by a mere assignment in trust for the assignor.

Neither is a homestead abandoned by a conveyance made for the purpose of avoiding creditors. The reason for this later rule is expressed in 13 Ruling Case Law, section 118, at page 660, where the editor says:

"The reasons usually given for negativing the liability of the homestead which has been fraudulently conveyed are substantially as follows: A homestead is not liable to seizure under execution, and therefore a conveyance of it is a question in which the creditor has no interest. It is not liable before conveyance to the claim he asserts; and the conveyance, though fraudulent, puts the creditor in no better condition than he was in before. If the conveyance is set aside as fraudulent this leaves the homestead as if no attempt had been made to convey it, so far as any claim can be asserted by the creditor. It is void as to him to all intents and purposes. He cannot be heard to say in one and the same breath that the conveyance is void in its attempt to divest title out of the debtor, but is valid in destroying the homestead right. He cannot claim both under and against the conveyance; under it as a valid parting with the homestead right; against it as an abortive effort to pass title out of the debtor. It must stand, as to him, as if no conveyance had been attempted."

Respondent refers us to several cases from neighboring jurisdictions, but inasmuch as the creation and abandonment of a homestead is purely a matter of statute we cannot lean too heavily upon such citations. They do indicate perhaps the

trend of legal reasoning. The following cases were so cited by respondents as tending to support their claims: *Hugunin* v. *Dewey,* 20 Iowa, 368; *Stewart* v. *Black,* 143 Or. 291 [22 Pac. (2d) 336]; *Archenhold* v. *B. C. Evans Co.,* 11 Tex. Civ. App. 138 [32 S. W. 795]; *Keeline* v. *Sealy,* 257 Mo. 498 [165 S. W. 1088]; *Ainsworth* v. *Dorsey,* (Tex. Civ. App.) 191 S. W. 594; *In re Feas' Estate,* 30 Wash. 51 [70 Pac. 270].

■ Having in mind the tendency in California is to protect the homestead, the power of a creditor to attack the homestead by forced sale must be strictly limited to the instances specified in the law, in order that the humane objects which the legislature intended by its enactment shall be effected.

■ Respondent urges that the failure of defendant to have the property subject to the homestead appraised within sixty days after the levy thereon as provided in section 1245 of the Civil Code constituted a waiver of her lien. Section 1245 of the Civil Code provides that when an execution for the enforcement of a judgment in certain cases,—in which classes the case here before us falls,—the judgment creditor may, at any time within the sixty days after the levy, apply to the superior court for an appraisement, and if such application shall not be made within such time, the execution of the lien shall cease and no execution based thereon shall be levied. The court found that the defendant had, for a period in excess of sixty days, failed to have said homestead property appraised in accordance with the foregoing section.

In *Magneson* v. *Pacific Mfg. Co.,* 26 Cal. App. 52 [146 Pac. 69], an action to quiet title, the court passed upon this question and held that the lien of the execution ceased by virtue of the statutory provision when no compliance was had with the requirements of this statute.

■ Therefore, it is apparent that plaintiff Mary Agnes Palen did not abandon her homestead by a transfer in constructive trust to another for her benefit; and that the levy on the property in a judgment against Palen is not effective for the reason the husband had no interest in the property; and by failing to comply with the provisions of section 1245 of the Civil Code the defendant waived any lien she might have against Mary Agnes Palen.

The judgment of the trial court should be affirmed, and it is so ordered.

Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 1, 1938.