## ALEXANDER v. JACKSON et al.*

### No. 13,489; December 23, 1890.

#### 25 Pac. 415.

**Homestead.—A Married Man Bought Certain Lots, Terms Part Cash,** balance on time, deed to be given on payment of balance, lots to be forfeited on failure to meet payments. He then built a house on the lots and moved into it with his family. The payments on the lots and the house were made with the community property. The wife executed and filed a declaration of homestead on the lots. Before final payments on the lots had been made, the husband assigned the contract and sold the house to plaintiff, who had knowledge of the homestead declaration, and who paid the balance of the purchase money and received a deed of the lots. Prior to the assignment to plaintiff, the wife offered to pay the vendor the amount due on the lots on condition that he would convey them to her or to her and her husband jointly. Held that, as at the time the declaration of homestead was filed the title was in the vendor, the wife acquired no rights in the property.

**Ejectment—Judgment.—Where in Ejectment There is Coupled** with a judgment for defendant an order that a certain sum be paid plaintiff, the leaving of this sum by defendant with plaintiff's attorney, which he refuses to accept, is not a satisfaction of the judgment so as to prevent an appeal by plaintiff.

---

*For subsequent opinion in bank, see 92 Cal. 514, 27 Am. St. Rep. 158, 28 Pac. 593.

APPEAL from Superior Court, Stanislaus County; William O. Minor, Judge.

Wright & Hazen for appellant; L. J. Maddux for respondents.

THORNTON, J.—This is an action of ejectment for lots 27 and 28 in block 86 in the town of Modesto, in which judgment passed for defendant Mary Jackson. Plaintiff appeals from the judgment on the judgment-roll. There is a motion to dismiss the appeal, which will be hereafter considered. The complaint is in the form usual in the action of ejectment. The allegations of the complaint are denied by defendant Mary Jackson, except as to possession when suit was brought. In her answer she sets up a defense that in April, 1869, she and W. A. Jackson intermarried in this state, and have since been husband and wife; that sometime in 1881 her husband entered into a contract in writing with Charles Crocker for the purchase of the lots of land above mentioned; that about September, 1884, her husband, W. A. Jackson, erected on these lots a residence of about the value of $1,500; that the money paid for the lots in suit and the house was the joint earnings of herself and husband, since their marriage; that defendant and her husband and children have, since it was built, made this house their home; that on the twelfth day of August, 1885, defendant duly executed and filed in the proper office a declaration of homestead on these lots; that by virtue of the contract entered into between Crocker and her husband, the latter was to pay Crocker the sum of $75 for each lot in installments, with interest, etc.; that on the 26th of October, 1885, there was not to exceed $35 due Crocker on the purchase price of these lots, on the payment of which her husband was entitled to a deed from Crocker; that he (her husband) had abundant means to pay the purchase price; that he fraudulently refused to do so to prevent the conveyance of these lots to him, and that he might fraudulently prevent her from acquiring a homestead in the property; that in October, 1887, her husband made a pretended assignment of the contract of purchase to the plaintiff, and on the same day pretended to enter into a contract by which he was to sell and transfer

to the plaintiff the house above mentioned; that this contract and assignment were entered into by the plaintiff and her husband for the purpose of cheating and defrauding her of her homestead; that at the time plaintiff accepted the assignment and contract he well knew that the purpose of the same was to cheat and defraud her of her homestead right; that in October, 1887, plaintiff presented the assignment to Crocker, and obtained a deed for the property; that this deed is the only title by which plaintiff claims the ownership of the property in controversy, and that it is void. It appears from the decision that the court found that W. A. Jackson, in 1884, purchased from Crocker, who then owned them, the lots in suit. The contract for the purchase of lot 28 was executed on the 28th of April, 1884, and that for lot 27 on the 7th of August, 1884. Other lots, including lot 29, were embraced in the contract of April, 1884. The contracts are similar in their terms. The purchase price of each lot was $75. Twenty-five dollars on each lot was paid when the contract was executed. The remaining $100 ($50 for each lot, 27 and 28) was to be afterward paid in two equal installments. The installments were to bear interest at the rate of ten per cent per annum. In each contract it is stipulated that if the purchase price is paid as set forth in it, with cost of conveyances, then W. A. Jackson will be entitled to a deed for the lots, otherwise the contract is null and void, and the amounts paid forfeited. If forfeited Jackson thereafter to be the tenant of Crocker, liable to be dispossessed upon three days' notice and to be liable to pay a rent of $15 per month for any term he may remain in possession after forfeiture. A payment was made on the 26th of October, 1885, for which a receipt was given by Crocker, in which the same provisions were inserted as to forfeiture on failure to pay, tenancy, liability to dispossession and the payment of rent, but at $5 per month for possession after forfeiture. After the purchase, W. A. Jackson and Mary Jackson entered into possession of the lots, and have ever since been in possession. In September, 1884, W. A. Jackson erected a dwelling-house and other improvements on lots 27, 28, and 29, at a cost of about $1,300. The marriage of defendants is found as set forth in the answer, and stated above. Upon the completion of these buildings, defendants

and their children entered into the dwelling-house and have
ever since made it their home.   The execution of the declara-
tion of homestead is found as above stated from the answer.
On or about the 6th of October, 1887, plaintiff and W. A.
Jackson entered into an agreement for the purchase and sale
of the dwelling-house and improvements, by which plaintiff
was to pay W. A. Jackson therefor the sum of $1,500, less
such sum as plaintiff should be compelled to pay Crocker for
the lots 27, 28, and 29.   W. A. Jackson at the same time
made and delivered to plaintiff a writing by which the former
surrendered and relinquished to the latter all claims to re-
ceive a conveyance for the lots just mentioned, and author-
ized the plaintiff to take and demand a conveyance there or
in his own name.   At the same time, plaintiff paid to his
vendor the sum of $100 as part payment for the improve-
ments on the lots.   On the 15th of October, 1887, plaintiff
paid to Crocker the balance due on these lots, and Crocker
then executed to him a conveyance thereof.   The balance
due on the lots described in complaint (27 and 28) was $35.35
principal, and $5.86 interest.   Plaintiff, on the 3d of Novem-
ber, 1887, paid to Jackson the further sum of $335.20, and
executed to him his promissory notes in writing for $1,000,
and also executed to him a mortgage on the three lots to
secure their payment.   It is also found that the money,
notes, and mortgage were the full purchase money of these
lots, and that Jackson thereafter sold, assigned, and deliv-
ered the notes to one T. W. Drullard as security for money
borrowed of him, of which notes and the mortgage Drullard
is now the holder as security for this money.   On the 6th of
October, 1887, and long prior thereto, plaintiff had full actual
knowledge of the declaration of homestead above stated, and
that Mary Jackson claimed and occupied the premises as a
homestead.   The plaintiff, immediately after the 3d of No-
vember, 1887, demanded possession of the lots sued for of
Mary Jackson, which she refused to deliver, and threatened
him with violence if he attempted to take or have possession
of them.   All the charges of fraud on the part of W. A.
Jackson and of the plaintiff are negatived by the findings.
It is further found that Mary Jackson offered to pay Crocker
the balance due him on the lots sued for in December, 1886,
upon the condition that Crocker would convey them to her,

or to her and her husband jointly; that she had full notice and knowledge of the right and title of the plaintiff to the premises ever since the 3d of November, 1887; that Mary Jackson and her husband have each had, since the date last mentioned (she of her separate property), sufficient means to pay the balance of the purchase money due on the lots in litigation, and that Mary Jackson is entitled to the judgment of the court. Judgment was accordingly entered in her favor, and it was by the judgment further ordered that "defendant Mary Jackson pay to the plaintiff the sum of forty-seven and twenty-one one-hundredths dollars, balance of the purchase price paid on the lots mentioned, with the interest on the same at seven per cent per annum from date hereof."

We cannot see that Mary Jackson derived any right by her execution and filing of the declaration of homestead. Conceding that her husband had some equitable interest in the premises, still whatever he had he was competent to sell and transfer it. This is so, though the payments· made by her husband were the earnings of the joint labors of herself and husband. Whatever interest was thus acquired was community property, of which the law invests the husband with the like absolute power of disposition (other than testamentary) as he has of his separate property: Civ. Code, sec. 172. The husband sold and transferred his interest in the land involved herein to the plaintiff, as he had a right to do. The vendor (Jackson) did not have the legal title to the property, but only the right to get it from his vendor, Crocker, on payment of the purchase money. The sale and assignment to the plaintiff transferred to him the right to have the legal title conveyed to him on payment of the unpaid balance of the purchase money. The purchase was fair in all respects. The court below expressly found that there was no fraud in any of these transactions between W. A. Jackson and plaintiff in regard to the rights of Mary Jackson. The question of fraud may then be laid out of the case. As the case is presented in the record, the law imposed no obligation on the husband to the wife to complete the purchase and procure a deed so as to make possible the acquisition of a homestead by her. Granting that in foro conscientiae there was an obligation binding the husband to pay the balance, and procure from Crocker a conveyance, such obligation was of the class styled

"imperfect," for the breach of which no redress can be had in a court of justice. The husband had lawful right to refuse to complete his purchase (Hicks v. Lovell, 64 Cal. 14, 40 Am. Rep. 679, 27 Pac. 942; Snodgrass v. Parks, 79 Cal. 55, 21 Pac. 429), and the wife cannot be heard to complain of it. When the declaration of homestead was executed and filed by Mary Jackson, the legal title was in Crocker, and he could not have been compelled to convey the land at the time of the transfer of the contract by Jackson to the plaintiff. The whole purchase money had not then been paid, and Crocker was entitled to hold onto the legal title, until he was paid the sum agreed on. Surely Mary Jackson could not, by executing and filing a declaration of homestead, affect Crocker's right to the land or the right of the plaintiff to whom Crocker might, under the facts of this case, have lawfully conveyed and did lawfully convey it. A right cannot be acquired by filing a declaration of homestead on the land of another. This point, if ever open to contention, is no longer debatable in this state: See Snodgrass v. Parks, supra. Crocker conveyed the legal title to the plaintiff. The filing of the homestead declaration invested Mary Jackson with no title to the land in suit, and did not detract from or affect in any way the potency of this title acquired by plaintiff by Crocker's conveyance to him.

The motion to dismiss the appeal is made on the ground that the judgment had been satisfied. The court gave judgment in favor of Mary Jackson, thus holding that she was entitled to the possession of the lots in controversy, and that plaintiff was not, and then ordered and adjudged that she pay to plaintiff a sum of money "because of the purchase money paid on the lots involved." This was done without any appropriate pleadings. She did not offer to pay any money, nor did she set forth in her answer any state of facts calling for any such judgment. The matter set up in the answer was pleaded merely as a defense to the action, which turned on the issue of right to the possession of the land sued for. There was no pleading on her part in which a demand was made for relief on payment of any sum of money. The portion of the judgment referred to (quoted above) was entirely outside of any issue joined in the cause before the court. It was entirely foreign to anything set forth in either com-

plaint or answer. There was nothing in the case on which to base it. It is suspended as it were in mid air, without support of any kind or description, and is entirely irregular and erroneous. The record shows this state of facts in regard to this alleged satisfaction: That Mary Jackson's counsel on the 31st of August, 1888, after the appeal was taken, left on the desk of one of the attorneys for plaintiff the sum of $45.86, thus tendering it to plaintiff as payment of the sum adjudged by the court to be paid to plaintiff by defendant; that the counsel for plaintiff refused to accept it, and still holds it for defendant. There is no ground for holding such a tender or payment a satisfaction of the judgment. The motion to dismiss the appeal is denied and the judgment is reversed, with directions to the court below to enter judgment on the findings for the plaintiff, with a judgment for rents and profits at the rate of $15 per month from the 31st of October, 1887, to the date of the judgment. So ordered.

We concur: Paterson, J.; Sharpstein, J.

FOX, J.—I concur in the order reversing the judgment of the court below on the ground that said judgment as entered is not supported, either by the pleadings or the findings. But I am not prepared to say that the defendant Mary Jackson has not a homestead interest in the premises which she is entitled to have protected, under proper pleadings.

We dissent: McFarland, J.; Beatty, C. J.