[S. F. No. 915. Department Two.—March 6, 1899.]

CITY OF EUREKA, Respondent, v. McKAY & COMPANY, Appellant.

DEDICATION OF STREET—QUESTION OF INTENT.—The dedication of a public street is a question of intent, and the acts of the owner of property are sufficient to prove a dedication only when they are evincive of such intent, or are such as to estop him from denying that such was his intent.

ID.—STREET UPON MARSH LAND—CHARTER OF CITY—DESIGNATION OF BOUNDARIES.—An act granting a charter to a city, and describing therein, as part of its exterior boundaries, a street called "A" street, which in fact was not open to travel or used as a street, though designated as "A" street upon an unauthorized map in the recorder's office, as crossing marsh lands on the water front, no cross streets or connecting streets being referred to in the act,

and the board of trustees of the town being required therein to lay off the water front in such lots as would accommodate mill owners and other occupants, and to sell the same to *bona fide* possessors, cannot be construed as intended to dedicate such street or to operate as a dedication thereof.

ID.—UNAUTHORIZED MAP—OFFER OF DEDICATION—LEGISLATIVE ADOPTION. An unauthorized map deposited in the recorder's office by a person having no interest in the land cannot amount to an offer of dedication; and an act of the legislature incorporating a city, which does not refer to such map, cannot be construed as an adoption thereof, because merely referring to a street by the same designation which is indicated upon the map.

ID.—MUNICIPAL ORDINANCE—SURVEY OF TOWN.—A municipal ordinance employing a surveyor to survey the town, "and set stakes at the corner of all blocks lying between A and N streets," does not operate as a dedication of "A" street, which had never been dedicated to public use, nor opened or used as a street, nor does it authorize the surveyor to lay out a new street or to file a map showing new or any streets.

ID.—DEED BY CITY—BOUNDARIES INCLUDING UNOPENED STREET.—A deed executed by the city to an occupant of land, specifically describing boundaries which include part of an unopened and unused street which had not in fact been dedicated to public use, without any reservation made in the deed, carries the title to the grantee of all the land granted, and indicates that the city did not then believe itself to have dedicated the street to public use.

APPEAL FROM JUDGMENT—STIPULATED FACTS—REVERSAL—NEW TRIAL.— If the facts in a case are stipulated by the parties, and the judgment is reversed upon an appeal therefrom, it is not necessary to order a new trial, but judgment will be ordered upon the stipulated facts in favor of the opposite party.

APPEAL from a judgment of the Superior Court of Humboldt County.   G. W. Hunter, Judge.

The facts are stated in the opinion of the Court.

E. B. & Geo. H. Mastick, for Appellants.

A. J. Monroe, for Respondent.

HENSHAW, J.—This is an action in ejectment brought by the city of Eureka to recover from defendants a piece of land alleged to be a public street of that city, described and known as "A Street." The answer denied the allegations of the complaint, and affirmatively pleaded the statute of limitations and an estoppel against plaintiff. The case was tried upon an agreed state-

ment of facts. Judgment passed for plaintiff, and defendant appeals.

In 1850 a settlement was made on the site of what afterwards came to be the town of Eureka, now the city of Eureka. In that year one Ryan made a map entitled "Map of Eureka." Before the eighteenth day of April, 1856, this map was deposited in the office of the recorder of Humboldt county, and has since remained in the office of the recorder. It bears upon it no marks of filing. The map represented blocks, lots and streets, those streets running generally north and south being named from the letters of the alphabet, those running at right angles to them by numbers. "A street," as delineated, forms the western boundary of the town, and extends from the waters of Humboldt bay southerly beyond Third street. On April 18, 1856, the legislature passed an act incorporating the town of Eureka. (Stats. of 1856, p. 103.) The boundaries of the town were thus delimited: "Commencing at a point one hundred yards north of A and First streets in Humboldt bay, and running south to the corner of A and First streets, thence southerly along A street to 16th street; thence easterly along 16th street to S street," etc. In the following year the state ceded to the town of Eureka all of the land which by virtue of its sovereignty it owned within the corporate limits of the town. (Stats. of 1857, p. 76.) Of the land so owned by the state and so granted to the municipality, a part was the "water front" of the town, defined in the act to be the land within the corporate limits of the town "extending from highwater mark to a point in the bay where the water shall not be over six feet deep at low tide." The other land which passed to the town by this grant was the marsh land lying between this water front and the upland proper. The land here in controversy is a part of this marsh land. The act contained the following provision: "Section 2. The board of trustees of said town are hereby authorized and required to lay off the said water front in lots of such size and in such manner as will accommodate and subserve the interest of the present 'mill owners' and other occupants, and shall proceed to sell such lots as are now in the *bona fide* possession of such 'mill owners' and other occupants, to said occupants, at a price not to exceed one dollar per front foot, and extending from highwater mark to a point in the bay where the water shall

not be over six feet deep at low tide." Upon the seventeenth of August, 1857, the board of trustees, following this act, adopted an ordinance known as ordinance No. 9, as follows:

"The board of trustees of the town of Eureka do ordain as follows: That Mr. Murray be employed to run off and set a stake at the corners of all the blocks lying between A and N streets and the bay and Third street, on the most reasonable terms." In the following month, by resolution, the trustees declared that "the board employed Mr. Murray to survey the town as provided in ordinance No. 9, for the sum of seventy-five dollars, the board to furnish assistance." In December, 1857, the minutes of the board of trustees show the following: "James Dawson applied for the water front in the rear of lots No. 20 and 21, on the map of Eureka, to be deeded to him as the occupant thereof," et cetera. John Vance claimed to be the sole occupant of the water front in part of the lot No. 16 on the map of Eureka. Upon the fourth day of January the minutes of the trustees show the following: "On motion of Mr. Simpson it was voted that a deed be executed to W. P. Duff as a *bona fide* occupant for a water front lot on the east side of B street, and extending from Third street to a point in the bay where the water is not more than six feet deep at low tide, and sixty feet wide, at the price of one dollar per front foot, the streets and alleys running across the said lot to be reserved by the town as they are laid out on the map of Eureka and surveyed by Mr. Murray in September last." On the fifteenth day of January, 1858, Ryan, on behalf of Ryan & Duff, made application to the trustees for a deed to a lot of land. On the sixteenth day of January, 1858, the board determined that Ryan & Duff were *bona fide* occupants of the "water front" claimed by them, and ordered "that a deed be executed to James T. Ryan and James R. Duff for the water front lot commencing at the northwest corner of A and Third street, from thence running northerly to a point in the bay where the water is not more than six feet deep at low tide; thence easterly to the east side of B street; thence southerly to Third street; thence westerly along the north side of Third street to the place of beginning, reserving a right-of-way to the bay in B street to W. R. Duff." A deed to this land from the city was duly made to William I. Reed, who had succeeded by purchase to the rights of Ryan & Duff, and the

defendant deraigns title by mesne conveyances from Reed, each successive grantee having paid full value for the property. Between the date of the passage of ordinance No. 9 and the date of the application of Ryan & Duff for a deed, Murray set stakes, as contemplated by ordinance No. 9, at the corners of the blocks, and in particular staked the corners of the blocks on A street, between First street and Third street. He also made a survey of A street between First and Third streets, and there was placed in the recorder's office a map called "Map of a re-survey of a portion of the town of Eureka, scale one hundred and fifty feet to the inch, by Joseph Seely, county surveyor. J. S. Murray, deputy." This diagram represents blocks, lots and streets, but it contains no names of streets, nor names or designations or numbers of lots or blocks, and bears no indication of the points of the compass. A comparison of it with the Ryan map discloses that it is but an enlarged and incomplete copy of that drawing.

The land affected by this controversy is a part of the land conveyed by the city to Reed. It is marsh land, and (assuming A street to be a street) comprises that portion of A street between Third street and Second street. This land was not, and never has been, open to travel nor used as a street; taxes have been paid upon it by defendant and its grantors regularly and continuously; and for many years it has been enclosed by a substantial fence.

The legal questions presented under these facts are the following: 1st. Was the land in controversy dedicated as a public street by the act of the legislature incorporating the town of Eureka? 2nd. Was it dedicated as a public street by the municipal authorities of the town of Eureka? 3rd. If a dedication was made, is an estoppel *in pais* raised against the city by reason of its deed, its subsequent conduct, and circumstances of an exceptional nature which would render it inequitable to permit the city to claim a street against this defendant?

1. We think it quite clear that the act of the legislature incorporating the town of Eureka did not operate as a dedication of A street. Dedication is always a question of intent, and the acts of the owner of the property are sufficient to prove a dedication only when they are evincive of such intent, or, what amounts substantially to the same thing, when they are such as to estop

him from denying that such was his intent. The act of 1856 was an act "to incorporate the town of Eureka," and as essential to that incorporation to fix the boundaries of the town, and thus limit the territory over which the municipality could exercise corporate jurisdiction. In defining these boundaries it made reference to streets. The streets named in the act were those which formed the boundary streets upon the Ryan map. It would be unreasonable to say that by the act of incorporation the legislature meant to dedicate as public streets these boundary streets, and yet that it entirely ignored all of the other cross streets and connecting streets shown on the map. In truth, the legislative mind was not directed to the dedication of public highways at all. That might well be left, and in fact was left, to the municipal authorities. The case upon this proposition is like those of *People v. Kruger,* 19 Cal. 411, and *People v. Dana,* 22 Cal. 11, where the same contention was made as to the dedication by the legislature of a street in San Francisco, and this court said: "This phrase was not designed to lay off a street or to protract the line of a street already existing. The legislature might well trust the city with such police and municipal regulation. The only object was to fix the boundary in order to show what was conveyed. This could as well be done by giving the course or the imaginary or real line of the given street as by opening and establishing the street to the desired point, and making it the boundary."

2. Do the acts of the municipal authorities amount to a dedication of A street? The Ryan map, being the unauthorized act of a person having no interest in the land, could not amount even to an offer of dedication. (*Eureka v. Croghan,* 81 Cal. 524.) The act of the legislature incorporating the town contained, as already stated, no dedication, much less an adoption of the Ryan map, to which no reference whatever is made. This portion of A street has never been used by the public as a street. If, then, a dedication of it as a highway was ever made, that dedication is to be found in the acts of the municipal authorities directed to that end. Here respondent places much reliance upon ordinance No. 9 and the acts of Mr. Murray in placing his survey stakes as contemplated by that ordinance. But ordinance No. 9 is not a dedication of proposed streets. The utmost that can be allowed for it is that it was a recognition by the municipality of pre-existing streets. Murray had no authority from

the board to lay out new streets, nor any authority to prepare or file a map showing new or any streets. The crude and imperfect drawing which was placed in the recorder's office, and which was made by Murray, contains no reference for its authority to ordinance No. 9. It does not disclose that it was made by the authority of any one. It contains no names or designations of streets or lots. So incomplete is it that it is not such a diagram or plat as could be made the foundation of an offer to dedicate by map, even if the desire so to dedicate were in the mind of the owner of the land. Nor is the mention of A street in ordinance No. 9 any evidence of an intent upon the part of the municipal authorities to dedicate it as a street. Murray was to survey and stake off the blocks "between A and N streets." If A street was not previous to the date of that ordinance a dedicated street, this language would not make it such. The case would be very like that before this court in *Cerf v. Pfleging*, 94 Cal. 131. There a plat had been made by one other than the owner, and without the owner's authority. The owner conveyed by reference to the lines of streets designated upon the plat, and the land conveyed was described "as being a part of Pacific street." This court said: "A mere statement of the owner of land that it constitutes a part of a street is certainly not an offer to dedicate, although it may be a probative fact of some value in determining whether he had not previously dedicated it." The grants by the city to other persons of the so-called water front lands made prior to the grant of the land here in question, do not affect the question. There is in them no reference whatsoever to A street. Thus, all the acts of the city up to the time of the grant to Reed are insufficient to show a legal dedication of the land in controversy. When we come, however, to the proceedings of the trustees by which the deed to Ryan & Duff was authorized to be made, there is strong internal evidence to combat the theory of a dedication and to prove that the intent to dedicate this portion of A street was never in the mind of the municipal authorities. The authorization, it will be noted, was for a deed to Ryan & Duff of certain specifically described and bounded lands. Within the boundaries thus defined were included the portion of A street in controversy, and a portion of the next adjoining street to the east, B street. The trustees were careful to reserve "a right of way to the bay in

B street to W. R. Duff." B street stood, so far as dedication by ordinance No. 9 was concerned, in precisely the same condition as did A street. Manifestly the trustees did not consider that B street was a public way, or they would not have been guilty of the folly of reserving a private right of way to an individual in a public street. From the full fee in B street which they granted to Ryan and James R. Duff they reserved a private right of way to W. R. Duff. No such reservation was made as to the land embraced in A street. It seems a natural—indeed, a most inevitable —conclusion that the municipal authorities at that time did not believe A street or B street to be public streets, and least of all did they believe that they themselves had dedicated them to public use.

3. The conclusion thus reached that there was no dedication of "A street" renders unnecessary any extended consideration of the question of estoppel *in pais* invoked against the city. Suffice it to say that this court has recognized such an estoppel in cases of peculiar hardship where, saving for its aid, grave injustice would result. (*Fresno v. Fresno C. & I. Co.*, 98 Cal. 179; *Los Angeles v. Cohn*, 101 Cal. 373.) But the facts in this case present not nearly so strong a motive for the invocation of the doctrine as was presented by the facts in the case of *Sacramento v. Clunie*, 120 Cal. 29. Yet in this latter case it was held that the proof fell far short of establishing this exceptional estoppel.

The agreed statement of facts was made subject to such objections in point of law as either party might make on the trial. Upon the trial the court overruled defendant's objection to the admission and consideration of certain facts set out in sundry paragraphs of the stipulation. We have preferred, however, to consider the questions of dedication and estoppel in the light of all of the admitted facts. The conclusions which we have reached render unnecessary any review of the objections made to the introduction of the evidence.

As the facts in this case are stipulated and the appeal is from the judgment, it is unnecessary to order a new trial. Upon the determination by this court that no dedication of "A Street" is proved, defendant is entitled to judgment upon the stipulated facts.

The judgment of the trial court is therefore reversed, and the

cause remanded with directions that upon the facts stipulated judgment be entered for defendant.

Temple, J., and McFarland, J., concurred.