[Civ. No. 21383.   Second Dist., Div. Two.   Apr. 4, 1956.]

MARIA ESTHER GARTEN, Respondent, v. MAURICE GARTEN, Appellant.

Oral R. Finch for Appellant.

Samuel J. Silverman and Leon I. Gubin for Respondent.

FOX, J.—In this divorce action defendant husband appeals from the judgment. His principal contentions are that the evidence is insufficient (1) to justify granting the plaintiff a divorce, (2) to support the finding that the family home is community property, and (3) to support certain other findings.

The parties were married in December, 1947, and separated in September, 1953. At this latter date, plaintiff was 28 years of age and defendant was in his late 50's. There are no children. Plaintiff's complaint is based on general allegations of cruelty. Defendant denied these and by amended cross-complaint made specific charges of cruelty against plain-

tiff. The trial court found plaintiff's allegation to be true and defendant's untrue.

The testimony shows that defendant frequently swore at plaintiff and called her a vile and vulgar name upon several occasions; accusing her of being "just plain lazy" when she was ill with a high temperature; called her "a damn fool," and said her relations were "all a bunch of fools." He slapped her, and on one occasion knocked her down. · She sought refuge at a neighbor's home. He told her he was going "to cut up" her face so that no one would look at her. They had frequent arguments and defendant would not speak to her for three or four days at a time. Additional evidence of defendant's misbehavior need not be recited. A neighbor, Mrs. Nelson, corroborated many of these instances and further testified that plaintiff was nervous and "terribly afraid." Plaintiff's physical condition became very run down and her weight dropped from 120 to 95 pounds. Such evidence amply supports the finding that defendant was guilty of extreme cruelty and that plaintiff was entitled to a divorce on that ground.

Defendant seeks to discount the value of Mrs. Nelson's corroborating testimony on the theory that there was collusion between her and plaintiff. This is simply an· argument on the credibility of the witness and the weight that should be given to her testimony. These were matters for the trial court's consideration.

Defendant complained of the admission in evidence of testimony relating to asserted acts of cruelty that occurred after the suit was filed. His position is not well taken. This evidence was admissible for corroborative purposes. (*Jackson* v. *Jackson*, 201 Okla. 292 [205 P.2d 297, 300, 7 A.L.R.2d 1410]; *Williamson* v. *Williamson*, 164 La. 144 [113 So. 796, 798].)

### Was the Family Home Community Property?

As a general rule, the character of property as separate or community is fixed as of the time it is acquired. The character so fixed continues until it is changed in some manner recognized by law, as by agreement of the parties. (10 Cal. Jur.2d § 12, p. 676.)

The lot on which the home was built was acquired by defendant some four years prior to his marriage. It was, of course, his separate property (Civ. Code, § 163), and its character as such was not changed by reason of the marriage, nor by its mere use in the marital relationship. (*Kenney*

v. *Kenney,* 128 Cal.App.2d 128, 135 [274 P.2d 951].) Defendant started the construction of the house in May or June, 1947, prior to his marriage to plaintiff in the following December. When they married the building was completed "except for some small items" and "most of it" was paid for. The money to pay the balance came from defendant's separate property according to his testimony, and not from the recording business which he had established some two or three months prior to the marriage. Title to the property stood of record in the name of defendant alone. Since the house and lot were acquired prior to the marriage, it was defendant's separate property (*Holmes* v. *Grange etc. Fire Ins. Assn.,* 102 Cal.App.2d 911, 917 [228 P.2d 889]; *Palen* v. *Palen,* 28 Cal.App.2d 602, 604 [83 P.2d 36]), in the absence of a satisfactory showing that it had been transmuted into community property by some agreement or understanding between the parties, or in some other manner recognized by law. However, there is no suggestion either in the pleadings or in the evidence of any transmutation of this property by agreement.

Plaintiff seeks to justify the trial court's finding that the home was community property on the theory that community funds and defendant's separate funds were commingled and that community funds found their way into this property. She particularly relies on the fact that an encumbrance was placed on the property and that interest and some small amount on principal had been paid. She either misconceives the rule or its application here. ■ The commingling rule does not apply where, as here, the husband's separate property has not lost its individual identity but can be clearly segregated and identified. (*Cline* v. *Cline,* 4 Cal.App.2d 626, 629 [41 P.2d 588]; *Scott* v. *Remley,* 119 Cal.App. 384, 387 [6 P.2d 536]; *Berry* v. *Berry,* 117 Cal.App.2d 624, 630, 631 [256 P.2d 646].) ■ As said in *Faust* v. *Faust,* 91 Cal.App.2d 304, 309 [204 P.2d 906]: "There is both a community and a separate interest in property purchased with separate and community funds where each contribution is clearly ascertainable." In the case at bar the lot, with a substantially completed house thereon, belonged to defendant at the time of the marriage, and hence was clearly identifiable as his separate property. It may be, however, that some community funds went into the completion of the house or were paid on the mortgage. It is only to this extent that the community has an interest in such separate property. ■ Where payments are made with community funds on real property

owned by one spouse before marriage "the rule developed through the decisions in California gives to the community a *pro tanto* community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds. (*Forbes* v. *Forbes,* 118 Cal.App.2d 324, 325 [257 P.2d 721]; *Giacomazzi* v. *Rowe,* 109 Cal.App.2d 498, 501 [240 P.2d 1020].) The rule would, of course, equally apply where the payments were made on an encumbrance placed on property acquired by one of the parties prior to marriage. (*Giacomazzi* v. *Rowe, supra.*) Under this rule, it follows that any payment of community funds either toward the completion of the house or on the encumbrance would not have the effect of converting the property into community property but rather would give the community a *pro tanto* interest in the property in the ratio that the payments with community funds bear to the value of the property. Since the land was acquired by defendant long prior to marriage and the house was substantially completed before that event, plaintiff cannot sustain the challenged finding on her "commingling theory." The only source from which any community funds could have been realized was through the operation of Tri-Color Recording Company* that defendant organized a few months prior to the marriage, which the court found to be defendant's separate property and from which decision plaintiff has not appealed.

In February, 1948, plaintiff began taking care of the books of this business and writing the letters. She continued these duties for some time but it is conceded she was not paid any salary. Her earnings were, of course, a community asset.

▌ Although the recording business was defendant's separate property, any earnings of defendant from his personal efforts in managing and operating this business in the nature of salary, wages, or the equivalent thereof, were community property. (*Cozzi* v. *Cozzi,* 81 Cal.App.2d 229, 232 [183 P.2d 739]; *Logan* v. *Forster,* 114 Cal.App.2d 587, 601 [250 P.2d 730].) Defendant testified he "never earned anything" in the business; that he kept putting money into it from his separate funds, to the extent of $20,000. ▌ If there were, however, earnings of a community character from defendant's operation of this business they would first be allocated to the living expenses of the parties in the absence of a contrary

---

*This was a fictitious name that was later changed to Aguila Recording Company.

arrangement for ''the law presumes that money used in the maintenance of a family is drawn from the community funds before there is encroachment on separate property.'' (*Estate of Tompkins,* 123 Cal. 670, 675 [11 P.2d 886]; *Estate of Cudworth,* 133 Cal. 462, 468 [65 P. 1041]; *Logan* v. *Foster, supra,* pp. 601, 602.)

On a retrial it will be necessary to ascertain what interest, if any, the community had in the property in question.

■ Defendant also challenges the sufficiency of the evidence to sustain the finding that the furniture and furnishings of the house were community property. This property was purchased by the parties at an auction after their marriage. Since it was acquired during coverture, the presumption is that it was community property. (Civ. Code, § 164; *Fountain* v. *Maxim,* 210 Cal. 48, 50-51 [290 P. 576].) There was some conflict in the evidence on this point. The trial judge resolved that conflict in favor of plaintiff. The presumption furnishes adequate support for the finding. (*McAlvay* v. *Consumers' Salt Co.,* 112 Cal.App. 383, 391 [297 P. 135].)

■ There is no merit to defendant's argument that the court erred in allowing plaintiff's attorneys' fees and court costs. It appears that she had no income-producing property or assets and was unemployed. Defendant was a man of considerable means. The question of such awards is addressed to the sound discretion of the trial court. (*Weil* v. *Weil,* 37 Cal.2d 770, 790 [236 P.2d 159].) Under the circumstances here shown, it was clearly not an abuse of discretion to require defendant to pay court costs and attorneys' fees in the amount of $700. (*Sigesmund* v. *Sigesmund,* 115 Cal.App.2d 628, 632-633 [252 P.2d 713].)

■ Defendant asserts there is a conflict in the findings as to the character of the recording business. In paragraph IV of the cross-complaint, defendant alleged all of the property mentioned in plaintiff's complaint except the automobile was his sole and separate property. Plaintiff had alleged the recording company was community property. The court made an omnibus finding that the allegations of paragraphs IV and V of the cross-complaint are not true. The court, however, made a later finding—though misplaced as a conclusion of law (*Estate of Cummins,* 130 Cal.App.2d 821, 831 [280 P.2d 128])—that the business known as Tri-Color Recording Company is the separate property of defendant. This specific finding controls for the ''rule is settled that where the court,

in addition to a general finding makes a specific finding as to a particular fact, the latter controls in the case of an inconsistency." (*Howard* v. *Howard*, 128 Cal.App.2d 180, 186 [275 P.2d 88]; *Staub* v. *Muller*, 7 Cal.2d 221, 226 [60 P.2d 283].)

Although the pleadings put in issue the question as to whether the recording business was community or separate property, and the court found it was defendant's sole and separate property, no mention is made of it in the judgment. ██ "While the court in a divorce action should not 'assign the separate property of one of the spouses to the other' (*Fox* v. *Fox*, 18 Cal.2d 645, 646 [117 P.2d 325]), yet when the issue has been made the court may determine whether the property is separate or community and quiet title to the rightful owner." (*Huber* v. *Huber*, 27 Cal.2d 784, 793 [167 P.2d 708].) ██ Since the pleadings put in issue the status of the recording business and the court found it was defendant's separate property, he was entitled to have the judgment quiet his title thereto. (*Huber* v. *Huber, supra.*)

██ Defendant objects that the court made an omnibus finding that all of his allegations in the cross-complaint charging cruelty were untrue. He argues that he was entitled to more specific findings. The rule is, however, that a general finding that all of the allegations of a pleading are untrue is sufficient. (*Petersen* v. *Murphy*, 59 Cal.App.2d 528, 533 [139 P.2d 49]; *Stevens* v. *Stevens*, 215 Cal. 702, 705 [12 P.2d 432].)

██ Defendant contends that the finding that his allegations of cruelty are untrue is not supported by the evidence. The answer to this contention is that the burden of proof was on him with respect to the allegations of his cross-complaint and that in the view of the trial judge he did not sustain that burden. In arriving at that conclusion the trial judge had the responsibility of evaluating the credibility of the witnesses and determining the weight to which their testimony was entitled. There was a sharp conflict in the evidence which the trial judge was required to resolve and his resolution thereof is controlling on appeal.

Relying on *DeBurgh* v. *DeBurgh*, 39 Cal.2d 858 [250 P.2d 598], defendant also argues that he too was entitled to a divorce. But this cannot be so since he failed to establish his allegations of cruelty.

That portion of the judgment which awards the family home, located at 607 De LaFuente, Monterey Park, county

of Los Angeles, to plaintiff on the ground that it is community property is reversed, with directions to retry the issue as to the extent of the interest, if any, that the community has therein and to enter judgment accordingly. The trial court is directed to include in the judgment a provision quieting title to the recording business in defendant. In other respects the judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.