[Civ. No. 5700. Fourth Dist. May 19, 1959.]

SYLVIA MAY WYNN, Respondent, v. HUGH V. WYNN, Appellant.

Lopez & Hyde and Bernard A. Brennan for Appellant.

McCormick, Moock & McCormick for Respondent.

SHEPARD, J.—This is an action for divorce. Judgment was rendered for plaintiff for divorce providing for the custody and support of the minor child, defining disputed property rights, and allocating community property. Defendant appeals but confines and limits, by his brief, his objections to that portion of the decree which adjudges three parcels of real property to be held in joint tenancy by the parties, and to that portion of the decree declaring certain cattle to be community property.

The parties were married December 17, 1949, and separated November 9, 1956. At the time of marriage defendant was the owner of four parcels of real property; a herd of cattle num-

bering 32 head, plus certain farm machinery and implements; and other minor items of personal property. Plaintiff was the owner of one parcel of real property and certain items of personal property not in dispute. Defendant owed at the time of marriage about $12,700, mostly secured by the real property. At the time of the divorce he owed $26,639.76, $16,542 of which was secured by real property and $10,097.76 partially secured by chattel mortgages.

In 1953, defendant caused Parcels 1, 2 and 3 of the realty described in his complaint to be transferred into the names of plaintiff and defendant, as owners in joint tenancy. In the same year plaintiff caused the parcel of realty owned by her to be transferred into the names of plaintiff and defendant, as owners in joint tenancy. Apparently, all transfers were made after discussions between the parties, and both parties were advised by an official of the bank with whom they were dealing as to the results of joint tenancy ownership. The fourth parcel owned by defendant had been purchased shortly before marriage with a small down payment; it was found by the court in its decree to be community property; and no objection or point is made of that in this appeal.

■ Defendant contends that he did not, at the time of the transfers into joint tenancy ownership, understand that such transfer divested him of the separate character of his ownership in that property; that the transfers were made solely for convenience in the financing; and that he intended and believed that it would remain as separate property.

While it is true that the record contains evidence which might be construed to support that conclusion it is also true that there was evidence that both of the parties had had explained to them the basic elements and effect of a transfer into joint tenancy; that the parties discussed this between themselves; and that it was intended to unite the family affairs into a stronger financial unit. ■ The formal transfer into joint tenancy by itself created a presumption that the legal title to the property was in the parties as joint tenants, in accordance with the plain language of the deeds. (*Chamberlain* v. *Chamberlain*, 2 Cal.App.2d 684, 687 [38 P.2d 790]; *Sandrini* v. *Ambrosetti*, 111 Cal.App.2d 439, 449 [4] [244 P.2d 742].) ■ The evidence does support the court's findings.

In *Estate of Bristol*, 23 Cal.2d 221, 223 [2] [143 P.2d 689], the court quite clearly explains that when the evidence is conflicting this court will not disturb the trial court's findings, using the following language:

" 'In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' "

 The defendant's second contention is that the evidence is insufficient to support the court's finding that all of the cattle except the breeding bull are community property. There is evidence that prior to marriage the defendant asked plaintiff to become his partner, to help him manage, plan, increase the family loan potential and unite all family forces into a profitable unit. Plaintiff assisted in all phases of the farming and cattle operations, including the operation of farm machinery, surveys, chopping and picking cotton, supervision of work crews, milking cows, tending cattle, and nursing sick calves. Money was borrowed partly on her credit to buy hay for the cattle and to finance current operational debts for the farm and cattle. Defendant stated that he never did anything without consulting plaintiff. Defendant spent one-third to one-half his time in the cattle business. The cattle were originally milk stock, but by constant turnover of purchase and sale were converted into a beef herd. There was an annual turnover in cattle of from $2,300 to $2,800. All of the milk cows were sold. The herd was largely fed from produce raised on joint tenancy property or community property after 1953. The farm machinery was from time to time traded in and the cash differences supplied out of farm income from joint tenancy or common property. Defendant used farm machinery for outside income in substantial amounts by hiring to other farmers. All of the stock now on hand, except the Hereford bull (found by the court to be defendant's property), were purchased during the marriage relationship. This is substantially true of the farm machinery and implements. Much of the farm income was from lands rented and worked during the marriage relationship. There was only one bank account, into which all income was deposited and all money was paid. During all of this time the defendant was paying substantial amounts for the

support of a former wife and their children. The purchases of cattle were made, at least to some extent, from funds derived from joint tenancy or community property, or from current operational loans in which plaintiff participated and in which her credit was involved. Appellant in his brief deals largely in generalities. The burden is upon the appellant to point out in specific detail the evidence upon which he depends. However, this court has been at pains to read the entire voluminous record and we are unable to discover therefrom how the trial court, short of an exhaustive detailed accounting (which was not furnished), could have identified, traced or reached a satisfactory conclusion as to what or how much of the commingled funds were attributable to or used for which of the properties. The extensive use of the time of both parties during marriage on the cattle, the constant purchase and sale from community funds, the uniform practice of consulting plaintiff on all transactions and of having her join in all financing are elements which the court apparently took into consideration in its final judgment, and were supportive of its reasoning.

■ While it is true that property held by one spouse before marriage is his separate property and is presumed to remain separate property (*Holmes* v. *Grange etc. Fire Ins-Assn.*, 102 Cal.App.2d 911, 917 [2] [228 P.2d 889] ; that the mere commingling of funds does not necessarily make them community property unless the funds cannot be traced (*Estate of Lissner*, 27 Cal.App.2d 570, 574 [2] [81 P.2d 448]) ; that the income of separate property remains the property of the spouse owning such property (*Estate of Pepper*, 158 Cal. 619, 624 [112 P. 62, 31 L.R.A.N.S. 1092]) and transmutations of separate property into other identifiable and traceable forms do not change separate property to community property (*Garten* v. *Garten*, 140 Cal.App.2d 489, 493 [6] [295 P.2d 23]) ; it is also true that all property acquired by purchase after marriage is presumed to be community property (Civ. Code, § 164; *Estate of Brenneman*, 157 Cal.App.2d 474, 480 [3] [321 P.2d 86], and the burden of proving that property acquired after marriage is separate property is on the party making that assertion. (*Thomasset* v. *Thomasset*, 122 Cal. App.2d 116, 123 [3] [264 P.2d 626].)

As in all cases of this kind, it is evident that the trial court endeavored to construe the intent of the parties, with respect to the separate community or joint tenancy character of the property, by what the parties did and said. (*Socol* v. *King*,

36 Cal.2d 342, 346 [2] [223 P.2d 627].) From the record before us, it appears that there is substantial evidentiary support for the position taken by the trial court in holding that the cattle, excepting the bull, are community property.

The judgment is affirmed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied June 12, 1959, and appellant's petition for a hearing by the Supreme Court was denied July 15, 1959. Schauer, J., was of the opinion that the petition should be granted.